Brett Schreiber (SBN 239707)
bschreiber@singletonschreiber.com
Meagan Verschueren (SBN 313117)
mverschueren@singletonschreiber.com
Katie Llamas (SBN 303983)
kllamas@singletonschreiber.com
SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Tel. (619) 771-3473

Attorneys for Plaintiff JANE DOE

## UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual, <br><br> Plaintiff, <br><br> v. <br><br> G6 HOSPITALITY, LLC.; G6 HOSPITALITY IP, LLC; G6 HOSPITALITY PROPERTY, LLC.; G6 HOSPITALITY PURCHASING, LLC.; G6 HOSPITALITY FRANCHISING, LLC.; MOTEL 6 OPERATING, LP.; SEAN TREVOR THOMPSON, an individual; CHRISTINA J. THOMPSON, an individual; ROMY THOMPSON, an individual; SHELDON L. THOMPSON, an individual; SKYE THOMPSON, an individual; WYNDHAM HOTEL & RESORTS, INC.; KPK, Inc.; KHATRI, INC.; KHATRI BROTHERS, L.P.; and DOES 1-50, inclusive, <br><br> Defendants. | No. <br><br> **COMPLAINT FOR DAMAGES AND INJURIES** |

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

## COMPLAINT

COMES NOW, the Plaintiff JANE DOE by and through the undersigned counsel, and respectfully submits this Complaint for damages and makes the following averments.

## INTRODUCTION

1. Jane Doe brings this action to hold Defendants accountable for facilitating and knowingly profiting from her sex trafficking. Plaintiff demands justice and compensation for the profound harms and losses she endured at Defendants' properties from 2015 through 2017.

2. Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, et seq. has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

3. In 2008, Congress amended the Trafficking Victims Protection Reauthorization Act ("TVPRA") to expand civil liability beyond traffickers and purchasers to include any person or entity that knowingly benefits, financially or by receiving anything of value, from participation in a venture that the person or entity knew or should have known engaged in sex trafficking.

4. For years, sex trafficking ventures have brazenly operated in and out of hotels throughout the United States, including at properties owned and operated by hospitality giants, Wyndham and Motel 6.

5. Major hotel brands, including Defendants, have made public claims about combating human trafficking, while at the same time expanding their economy hotels where sex trafficking is most prevalent and profiting from crimes that are perpetrated on their properties and from providing harbor for the underlying assaults. Time after time, Defendants have scouted and chosen properties on "blades" and areas specifically known for prostitution, crime and sex trafficking.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

6. The hotel and hospitality industry continue to create and expand the environment for traffickers to harbor victims and neglect taking reasonable steps to prevent such criminal misconduct, instead choosing to earn a profit at the expense of human life, human rights, and human dignity.

7. For decades, the hospitality and sex trafficking industries have operated in a symbiotic relationship with one another—each providing crucial needs to the other that allows each to continue to thrive. Traffickers depend on hotels and motels to facilitate exploitation, while hospitality operators rely on profits from rooms repeatedly used for commercial sexual abuse.

8. Appearances and sponsorships do not excuse corporations and individuals that have financially benefited from sex trafficking, including G6 entities, Motel 6 companies, Wyndham entities, and Travelodge companies. In fact, it reveals corporate knowledge of the use of their properties as hubs for human trafficking. The hotel industry has provided the means, environment, and support for the human trafficking industry to become the second largest profitable criminal activity in the United States.[1] They speak about ending it, but their actions intentionally promote it as they continue to knowingly profit from it every single day.

9. As the trafficking industry grows, so have Defendants and their profits through the expansion of their properties and rooms rented for this explicit and apparent purpose.

10. At some locations, Motel 6 past live-in managers estimate that up to 90% of their business and profits were directly tied to trafficking. Managers and past employees allege the sex trafficking was reported up the chain to corporate (G6 Defendants) and they were encouraged to look the other way. Corporate did nothing

---

[1] Human trafficking is now the SECOND MOST PROFITABLE CRIMINAL ACTIVITY in the United States! - Monique Burr Foundation

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

to prevent or stop it. Wyndham employees have reported similar knowledge and experiences.

11. JANE DOE endured sex trafficking in motels owned, operated, maintained, and controlled by Defendants, their agents and staff.

12. JANE DOE was subjected to unimaginable atrocities including but not limited to repeated daily rape, verbal and physical attacks, forced ingestion of drugs, humiliation, fear, and psychological manipulation and degradation. Defendants continued supporting traffickers, including JANE DOE's trafficker, despite evident and apparent signs of ongoing sex trafficking, and of Plaintiff being trafficked, at its motels and specifically the following locations:

a. Motel 6 Turlock, 250 S. Walnut Road, Turlock, California 95380;

b. Motel 6 Modesto, 807 Needham Street, Modesto, California 95354;

a. Travelodge by Wyndham Turlock, 201 W. Glenwood Avenue, Turlock, California 95380;

b. Tiki Lodge Hotel, 936 McHenry Avenue, Modesto, California 95350; and

c. Budgetel Inn & Suites, 1525 McHenry Avenue, Modesto, California 95350.

13. The Defendants benefited financially from the trafficking of JANE DOE at their properties. They obtained money for several room rentals for the apparent and exact purpose of trafficking JANE DOE. Defendants allowed their motels, managers and employees to facilitate and support the trafficking of JANE DOE. Defendants strategically provided venues where traffickers could exploit victims like JANE DOE with minimal risk of detection and interruption so that Defendants could continue to profit from regular room rentals. As a result of sex trafficking, Defendants thrive. To them, it's a well-thought-out business decision. To JANE DOE, it a nightmare that she fears she will never wake up from. Defendants destroyed her life and she lives with the reality of what happened to her, and her permanent injuries and damages, every

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

single day.

14.    JANE DOE files this civil lawsuit seeking full justice for the harm she suffered as a direct result of being trafficked for sex, abused and sold to buyers at hotels owned, operated, maintained, regulated, and controlled by Defendants and their agents and staff. Defendants knowingly participated in atrocities so insurmountable, so indescribable, it defies comprehension—an anguish no human should ever be condemned to face.

## **PARTIES**

15.    JANE DOE is a natural person who is currently a resident and citizen of California. JANE DOE is a survivor of sex trafficking. From approximately 2015 through 2017, she was harbored, forced and coerced to engage in commercial sex acts for the benefit of her trafficker and Defendants.

   a. Due to the sensitive, private, and potentially retaliatory nature of these allegations, this Complaint identifies JANE DOE by a pseudonym only. JANE DOE will move the Court to proceed under a pseudonym in all filings, all public Court proceedings, and to limit the disclosure of information about JANE DOE's true identity in order to protect JANE DOE and JANE DOE's identity.

   b. Generally, pleadings must state the name of all parties.[2] However, there are exceptions when the issues involved may result in retaliation or harm to the Plaintiff.[3] For good cause, the Court may issue an order to protect a party or person from undue harms and burdens.

   c. In order to maintain her and her child's privacy and safety, JANE DOE should not be compelled to disclose her identity publicly. JANE DOE's

---

[2] Fed. R. Civ. P. 10(a).
[3] See Cases e.g., *Doe v. Penzato*, 2011 U.S. Dist. LEXIS 51681, *6-9 (N.D. Cal. May 13, 2011); *Roe v. St. Louis Univ.*, 2009 U.S. Dist. LEXIS 27716, *13, (E.D. Mo. Apr. 2, 2009)

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

privacy interest substantially outweighs the customary practice of judicial openness.[4] JANE DOE's life could be put in grave danger should her trafficker or his associates learn information about her through publicly filed documents in this action and if they find out she has spoken out about the trafficking.

   d. Defendants will not be prejudiced. JANE DOE will agree to reveal her identity to Defendants for the limited purpose of investigating JANE DOE's claims once the parties have entered into a protective order.

   e. Plaintiff simply seeks redaction of JANE DOE's personally identifying information from the public docket and assurances that Defendants will not use or publish JANE DOE's identity in a manner that will compromise her personal life, future safety, family's safety, or employment prospects, as well as her rights to privacy after being a victim of multiple sex abuses, physical violence, and sexual assaults.

16. Defendants SEAN TREVOR THOMPSON, CHRISTINA J. THOMPSON, SHELDON L. THOMPSON, and SKYE THOMPSON are all adult individuals that reside in California. Defendant ROMY THOMPSON is an adult individual that resides in New Orleans, Louisiana. Together, these individual defendants shall hereinafter be referred to as "the THOMPSONS."

17. The THOMPSONS owned, managed and operated the subject Motel 6 located at 807 Needham Street, Modesto, California 95354 during the time Plaintiff was trafficked there from approximately 2015 through 2017.

18. Defendant G6 HOSPITALITY, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

19. Defendant G6 HOSPITALITY, IP, LLC is a for-profit Delaware corporation

---

[4] See case *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (internal citation and quotations omitted).

6

COMPLAINT FOR DAMAGES AND INJURIES

with its principal place of business in Carrollton, Texas.

20. Defendant G6 HOSPITALITY PROPERTY, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas. At all times relevant, G6 HOSPITALITY PROPERTY, LLC directly owned, controlled, managed, and operated the subject Motel 6 located at 250 S. Walnut Road, Turlock, California 95380.

21. Defendant G6 HOSPITALITY PURCHASING, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

22. Defendant G6 HOSPITALITY FRANCHISING, LLC., is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

23. Defendant MOTEL 6 OPERATING, LP., is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

24. Defendants G6 HOSPITALITY, LLC, G6 HOSPITALITY IP, LLC; G6 HOSPITALITY PROPERTY, LLC.; G6 HOSPITALITY PURCHASING, LLC.; G6 HOSPITALITY FRANCHISING, LLC.; MOTEL 6 OPERATING, LP., will collectively be referred to as "G6 Defendants."

25. G6 Defendants are registered to do business in the State of California and may be served at 1325 J Street, Suite 1550 Sacramento, California.

26. At all relevant times, G6 Defendants owned, operated, managed, maintained, inspected, secured, supervised, and controlled the following locations; and transacted business in the State of California and purposefully availed itself to the State of California through its operation, control and/or ownership of the following Motel 6 real property locations: (1) Motel 6 Turlock, 250 S. Walnut Road, Turlock, California 95380; and (2) Motel 6 Modesto, 807 Needham Street, Modesto, California 95354 (together, "the Subject Motel 6 Properties"). G6 Defendants monitored online reviews, managed safety reports, and assumed the responsibility to handle trafficking matters

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

at the Subject Motel 6s from 2015 through 2017, as well as before and after.

27. Whenever reference is made in this Complaint to any act, deed, or conduct of the THOMPSONS, the allegation is that the THOMPSONS engaged in the act, deed or conduct by or through one or more of their officers, directors, agents, staff, or representatives who was actively engaged in the management, control, or transaction of the ordinary business and affairs of the G6 Defendants.

28. Whenever reference is made in this Complaint to any act, deed, or conduct of the G6 Hospitality Property, LLC, the allegation is that the G6 Hospitality Property, LLC engaged in the act, deed or conduct by or through one or more of their officers, directors, agents, staff, or representatives who was actively engaged in the management, control, or transaction of the ordinary business and affairs of the G6 Defendants.

29. Whenever reference is made in this Complaint to any act, deed, or conduct of the G6 Defendants, the allegation is that the G6 Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, staff, or representatives who was actively engaged in the management, control, or transaction of the ordinary business and affairs of the G6 Defendants and the THOMPSONS.

30. Defendant KPK, INC. is a for-profit California corporation with its principal place of business in Belmont. Its officer was at all relevant times Kokila P. Khatri. Defendant KPK, INC. owned, managed and operated the subject Travelodge by Wyndham located at 201 W. Glenwood Avenue, Turlock, California 95380, during the time Plaintiff was trafficked from approximately 2015 to 2017.

31. Defendant WYNDHAM HOTEL & RESORTS, INC. ("Wyndham") is a corporation that brands, instructs, advertises, inspects, controls, oversees, and contracts with about 9,000 branded properties for profit, including Travelodge by Wyndham®, and specifically with KPK, INC. for the Travelodge by Wyndham located at 201 W.

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

Glenwood Avenue, Turlock, California 95380, ("the subject Travelodge") where Plaintiff was trafficked. Wyndham is a Delaware corporation with its principal place of business in Parsippany, State of New Jersey and can be served through its registered agent in Wilmington, Delaware.

32. Wyndham is the successor to Wyndham Worldwide Corporation and is liable under successor liability for the wrongful acts of Wyndham Worldwide Corp., so "Wyndham," as referred to herein, also includes Wyndham Worldwide Corp.

33. Wyndham shares, and at all relevant times shared, profits with franchisees, including but not limited to KPK, INC. and directly profited from the room rentals and goods sold for sex trafficking at its branded properties, including the subject Travelodge. It has known for decades that sex trafficking has been occurring at its properties and branded properties, including in California, at Travelodge properties, and at the subject Travelodge by Wyndham. Wyndham did not and has not taken any reasonable action to prevent sex trafficking at its branded properties, including the subject Travelodge, up to 2017 and beyond, despite making public statements indicating that is has and will.

34. Wyndham owned and/or had an ownership interest in, supervised, managed, controlled, inspected, operated, monitored online reviews, managed safety reports, and assumed the responsibility to handle trafficking matters at the subject Travelodge from 2015 through 2017, as well as before and after.

35. KHATRI, INC. is a California corporation with its headquarters and principle place of business in Modesto. At all relevant times, KHATRI, INC.'s officers at the time Plaintiff were Trushil Khatri, Pranita Khatri, Anil M. Khatri, Jawaharlal M. Khatri, and Pranil A. Khatri. KHATRI, INC. owned, operated, managed and controlled the Tiki Lodge Hotel at 936 McHenry Avenue, California 95350 at all relevant times while Plaintiff was trafficked there from 2015 through 2017, and before and after.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

36. KHATRI BROTHERS, L.P. is a limited partnership in California. Based upon information and belief, at all times relevant, its partners were Anil M. Khatri, Jawahalrlal M. Khatri, and Narendra M. Khatri, who reside in California, including Modesto, California. KHATRI BROTHERS, L.P. owned, operated, managed and controlled the Budgetel Inn & Suites located at 1525 McHenry Avenue, Modesto, California 95350 from approximately 2017 through 2019 while Plaintiff was trafficked there.

37. The Khatri family members, through KPK, INC. KHATRI, INC. and KHATRI BROTHERS, L.P. (together, "the KHATRIS"), owned, controlled and operated three of the hotels where JANE DOE was abused, sold and trafficked for sex: the Travelodge, the Tiki Lodge Hotel, and Budgetel Inn & Suites. At all relevant times, each of these hotels were known to members of the public as being a cesspool filled with crime and the KHATRIS allowed and participated in crime at each.

## JURISDICTION AND VENUE

38. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the Trafficking Victims Protection Reauthorization Act ("TVPRA").

39. Venue is proper in this court pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendant's misconduct and omissions that led to injuries, occurred in the judicial district where this action is brought.

40. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d), at least one Defendant is a resident of Modesto County, California, and all Defendants are registered to do business in California.

41. Upon information and belief, Defendants transacted business in the

Counties of each hotel at issue in this case and purposefully availed themselves to the Counties within the Eastern District of California's jurisdiction, and the citizens of California through the subject hotel locations and operations.

## SEX TRAFFICKING UNDER FEDERAL LAW

42. Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[5]

43. The requirements for liability under the TVPRA on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value" (2) "from participating in a venture" (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

44. "Sex trafficking" is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act" — and each constitutes a violation of the Chapter mentioned in Section 1595 above.

45. The term "severe forms of trafficking in persons" includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age." 22 U.S.C. § 7102(11). Here, Plaintiff was a victim of sex trafficking at Defendants' properties and for Defendants' benefit.

## FACTUAL ALLEGATIONS

### The Hospitality Industry Has Known for Decades that It Facilitates and Aids the Sex Trafficking Industry and that Sex Trafficking Occurs Constantly at Its Properties.

---

[5] 18 U.S.C. §1591; 22 U.S.C. § 7102.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

46. The Defendants' knowledge and notice is not limited to the specific red flags that Plaintiff exhibited at the subject hotel locations in the presence of the staff. The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what the Defendant's knew or should have known regarding the trafficking at their subject hotel locations, including the trafficking of Jane Doe. The hospitality industry has been aiding and abetting sex trafficking for decades.

47. Hotels are the primary place where sex trafficking happens.[6] For years, sex traffickers have "been able to reap their profits with little risk when attempting to operate within hotels."[7] For a long time, the two industries have operated together in a symbiotic relationship. Each profits because of the other.

48. According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur. In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels."[8] Traffickers and buyers alike frequently use hotel rooms to exploit victims.

49. In 2017, human trafficking was noted as the world's fastest growing crime.[9] While the term "human trafficking" incorporates all forced labor, the sex trafficking industry alone brings in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of all illegal drugs.[10]

---

[6] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's also Big Business*, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us-slavery/

[7] *See Human Trafficking in the Hotel Industry*, Polaris Project (Feb. 10 2016), https://polarisproject.org/blog/2016/02/human-trafficking-in-the-hotel-industry/

[8] Michele Sarkisian, Adopting the Code: Human Trafficking and the Hotel Industry, Cornell Hotel Report (Oct. 2015),

[9] Human Trafficking is the World's Fastest Growing Crime. May 22, 2017. The Advisory Board. Available at: https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking

[10] Profits and Poverty: The Economics of Forced Labor. May 24, 2014. International Labor Organization. Available at: http://www.ilo.org/global/publications/ilo-bookstore/orderonline/books/WCMS_243391/lang--en/index htm.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

50. The hospitality industry plays a crucial role in the sex trade.[11] Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Despite the known risks and known trafficking crimes, Hotels, including the Defendants, offer anonymity and non-traceability to the traffickers, making them ideal venues for crime and sex trafficking in particular. Hotels, including the Defendants, knowingly harbor traffickers, buyers, and victims.

51. According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur. Traffickers and buyers alike frequently use hotel rooms to exploit victims.

52. Due to the overall hospitality industry's complacency, complicity, and reckless disregard in addressing the known issue of sex trafficking, hotels are the venue of choice for sex trafficking. Traffickers and buyers capitalize on the hotel industry's general refusal to (1) adopt and enforce companywide anti-trafficking policies from the corporate to the property level, (2) train staff on what to look for and how to respond, and/or (3) establish safe and secure reporting mechanisms for those at the point of sale.

53. Every day, thousands of hotel staff witness manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach and ability to identify, prevent and thwart sexual exploitation where it is most likely to occur.

54. Hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual exploitation and should be held accountable when they fail to comply. As stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the

---

[11] Cavagnaro, Giovanna L. C. 2017. Sex Trafficking: The Hospitality Industry's Role and Responsibility. Cornell University School of Hotel Administration. Available at: http://scholarship.sha.cornell.edu/honorstheses/3.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

crime and can be liable for failing to do so."

55. Even estimates by attorneys for the hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[12] The 2016 Trafficking in Persons Report issued by the United States Department of State also confirmed that human trafficking occurs in the hospitality industry in the United States.

56. The complicity of the hospitality industry is essential to the perpetuation of human trafficking, allowing traffickers to remain transient, collect profits, and evade detection. Sex trafficking ventures move from place to place so that they are less visible to law enforcement. Similarly, sex traffickers also want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are well aware of the seclusion and anonymity attendant with booking rooms with certain hotel chains, including the G6 Defendants and Wyndham— they know it is unlikely that they will be disturbed and can return again and again without issue.

57. Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking to no avail.

58. The most effective weapon against sexual exploitation and human trafficking is education and training.[13] As PACT concluded:

> *Due to the anonymous, risk-free nature of the hospitality industry, children across the globe are exploited in hotels—ranging from budget properties to luxury resorts. Hotel associates are uniquely situated to identify and report suspicious activity. From check-in to check-out there are a number of indicators victims and traffickers exhibit during the time they are on a hotel*

---

[12] U.S. Dep't of State. 2016. 2016 Trafficking in Persons Report, at 387. Available at: https://www.state.gov/documents/organization/258876.pdf.
[13] Polaris Project, *Recognizing Human trafficking*, https://polarisproject.org/recognizing-human-trafficking/

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

*property. With proper training, a front desk agent or a housekeeper can notice that something is not right and respond.*[14]

59.     There are abundant free resources available to the hotel industry that provide effective trafficking recognition and response training and have for several years before Plaintiff JANE DOE was trafficked. Every hotel – large and small, luxury and modest, urban and rural – has the resources to implement a viable anti-trafficking program.

60.     Multiple agencies have established recommended policies and procedure for recognizing the signs of sex trafficking. Each of the following organizations, and more, offers guidance and recommendations for viable programs in this context:

    a. The United States Department of Homeland Security – DHS Blue Campaign

    b. The National Center for Missing and Exploited Children

    c. The Polaris Project

    d. The Texas Attorney General

    e. Love 146

    f. Protect All Children from Trafficking - PACT

    g. United Nations Universal Declaration of Human Rights

    h. United Nations Global Compact

    i. United Nations Guiding Principles on Business and Human Rights

    j. The Code – The Tourism Child Protection Code of Conduct

    k. National Human Trafficking Resource Center and Hotline

    l. HHS/ACF Look Beneath the Surface

    m. Businesses Ending Slavery and Trafficking - BEST

    n. Sustainable Hospitality Alliance Trafficking Recommendations

---

[14] PACT USA, *Hotel Training for Associates and Managers*, https://courses.wearepact.org/hotel-training

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

o. American Hotel Lodging Association Trafficking Recommendations

61. The leading federal agency in this area is the United States Department of Homeland Security (DHS) Blue Campaign. The Blue Campaign is the unified voice for the U.S. Department of Homeland Security's efforts to combat human trafficking. Working with law enforcement, government and non-governmental and private organizations, the Blue Campaign strives to protect the basic right of freedom and bring those who exploit human lives to justice.[15]

62. The Blue Campaign recognizes that traffickers have long used the hotel industry for sex trafficking and offers resources for the industry, including an essential list of actions these businesses can take to help stop human trafficking.

63. The Blue Campaign has produced lists of warning signs of human for members of the hotel industry. The DHS remarked "Hotel and hotel staff are often in the best position to see potential signs of human trafficking, especially since your duties give you access to different areas of the properties. You may also have direct or indirect contact with both traffickers and victims."[16] Sex trafficking "red flags" applicable to this lawsuit are described below. The compendium of "red flags" is available as part of the Blue Campaign Hospitality Toolkit. [17]

64. The Blue Campaign provides specific "signs of human trafficking for housekeeping, maintenance, and room service staff.[18] According to the Blue Campaign: "Housekeeping, maintenance, and room service staff typically have the most access to guest rooms where signs of human trafficking may be apparent. By being conscious of human trafficking indicators, you can help identify possible human trafficking

---

[15] https://www.dhs.gov/blue-campaign
[16] *Id*; *see also* Indicators of Human Trafficking, https://www.dhs.gov/blue-campaign/indicators-human-trafficking
[17] Blue Campaign. One Voice. One Mission. End Human Trafficking. Hospitality Toolkit. https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf
[18] *Id*.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

activities and victims."

65. There is a distinct list of "red flags" that pertain specifically to "concierge, bellman, front desk, security, and valet staff." These staff are typically the first to see guests when they enter the hotel and should be trained to detect signs of potential trafficking."[19]

66. There is yet an additional category dedicated to providing signs of human trafficking for "food and beverage staff" in the hospitality industry.

67. Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking in the hospitality industry, which Defendants were aware or should have been aware of at all subject times of the trafficking alleged herein include learning to identify warning signs and indicators of sex trafficking, including but not limited to:

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;
- Individuals show signs of physical abuse, restraint, and/or confinement;
- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;
- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;
- Individuals lack freedom of movement or are constantly monitored;
- Individuals avoid eye contact and interaction with others;
- Individuals have no control over or possession of money or ID;
- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

[19] *Id.*

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

- Individuals have few or no personal items — such as no luggage or other bags;
- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;
- A group of girls appears to be traveling with an older male;
- A male escorting a female or other male to and from a room; lack of freedom of movement;
- Intoxicated individuals that are controlled and/or abused by others;
- Physical violence, abuse, screams and crying;
- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;
- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;
- Possession and presence of bulk sexual paraphernalia such as condoms or lubricant;
- Possession or use of multiple cell phones;
- Possession or use of large amounts of cash or pre-paid cards;
- "Do Not Disturb" sign used constantly;
- Requests room or housekeeping services (additional towels, new linens, etc.), but denies hotel/hotel staff entry into room;
- Refusal of cleaning services for multiple days;
- Excessive amounts of cash in a room;
- Smell of bodily fluids and musk;
- Presence of multiple computers, cell phones, pagers, credit card swipes, or other technology;

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

- The same person reserving multiple rooms;
- Individuals leaving the room infrequently, not at all, or at odd hours;
- Individuals loitering in hallways or appearing to monitor the area;
- Excessive amounts of alcohol or illegal drugs in rooms;
- Evidence of pornography;
- Excessive number of people staying in a room;
- Extended stay with few or no personal possessions;
- Provocative clothing and shoes;
- Constant flow of men into a room at all hours;
- Excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);
- Patrons checking into room appear distressed or injured;
- Room paid for with cash or pre-loaded credit card;
- Excessive use of hotel computers for adult oriented or sexually explicit websites;
- Patrons not forthcoming about full names, home address or vehicle information when registering;
- Individuals dropped off at the hotel or visited repeatedly over a period of time;
- Individuals checking into room have no identification;
- Room is rented hourly, less than a day, or for long term stay that does not appear normal;
- Paying daily in cash for extended stays;
- Patrons request information or access to adult services or sex industry;
- Room rented has fewer beds than patrons;

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

- Individuals enter/exit through the side or rear entrances, instead of the lobby;
- Car in parking lot regularly parked backward, so the license plate is not visible;
- Individuals asking staff or patrons for food or money.

68. The above policies and warning signs are designed to reduce sex trafficking. These "red flags" compose the standard of what hotels must look out for and know to look out for, and all of which have been known to the hospitality industry and G6 Defendants and the people behind the G6 Defendants' companies since long before 2018. Defendants chose not to and were negligent in not adopting, implementing and enforcing simple policies to prevent sex trafficking at their properties and to save people like Plaintiff.

69. The Department of Homeland security urges businesses – such as the subject hotels and hotel chains – to utilize the free educational services offered by the Blue Campaign to help identify victims of human trafficking by raising awareness and encouraging the public to report instances of human trafficking.[20]

70. Federal government agencies also publish extensive tools for responding to suspected sex trafficking. One compendium is the United States Department of Health and Human Services "Identifying Victims of Human Trafficking – Fact Sheet."[21] This document acknowledges that responding to sex trafficking requires affirmative action: "It is important to be vigilant and to 'look beneath the surface' in situations that don't seem quite right. One chance encounter could be a victim's best hope for rescue."[22]

---

[20] https://www.dhs.gov/blue-campaign
[21] United States Department of Health and Human Services , Fact Sheet: Identifying Victims of Human Trafficking, https://acf.gov/sites/default/files/documents/orr/fact_sheet_identifying_victims_of_human_trafficking.pdf
[22] *Id*.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

71. It is widely recognized that effective training has a substantial impact on the prevalence and scope of trafficking.[23] According to the American Hotel Lodging Association: "Hotel staff who have undergone training are more aware of trafficking when it happens and are more willing to report it – than those who have not been trained."[24]

72. Thus, when hotels implement viable anti-trafficking measures, provide proper training, and enforce anti-trafficking policies, trafficking is less likely to occur, and victims are more likely to be rescued. Unfortunately, despite their knowledge and the age-old information that they should have known, Defendants have continued to allow sex trafficking to occur at their properties.

73. Conversely, when training is not provided and when anti-trafficking policies are not enforced, hotels and their staff are much more likely to participate in and facilitate the trafficking of victims like Jane Doe. This is the case for Defendants in this lawsuit.

74. From the top down, major hotel brands like Motel 6, including all of the G6 Defendants; and Wyndham, including Travelodge; and the people behind each company, know that sex trafficking has been and is occurring at their properties and they have received consistent reports from their employees regarding the same for a long time. Unfortunately, instead of taking expedient, specific and zero-tolerance action and policies to stop and prevent it, Motel 6 and Wyndham companies have merely treated it as a cost/benefit analysis in terms of how likely they were to get sued or held accountable versus the profits it was generating. Until recently, lawsuits were not being filed and they were not being held accountable. Now, through this lawsuit,

[23] Emily Roman, "Evaluating the Impact of Training Staff to Identify Victims of Human Trafficking" (2019). Digital Commons @ ACU, Electronic Theses and Dissertations. Paper 152, https://core.ac.uk/download/212874317.pdf

[24] American Hotel Lodging Association, No Room for Trafficking, https://www.ahlafoundation.org/nrft/

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

Plaintiff intends to hold them fully accountable and to make sex trafficking an unprofitable venture for Defendants to participate in.

75. To be truly effective, human trafficking training should be part of an ongoing education and communication program to provide hotel staff with the knowledge and support they need to ensure a safe environment for all staff and guests.[25]

76. The relationship between a "pimp" and "prostitute" is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in "prostitution," also known as "commercial sex," are subject to force, fraud, and/or coercion. It is also well understood that "prostitution" and "sex trafficking" involve a common denominator: the exchange of sex for money that goes to a controlling abuser/captor.

77. Every day, thousands of hotel staff witness red flags and manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur—at their properties.

78. At all relevant times, there were long-standing, well known, viable standards of conduct and corporate operations available to the hotel industry to combat, prevent, and end sex trafficking at their properties.

79. At all times of trafficking alleged herein, Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Defendants knew or should have known that signs of commercial sex activity, in combination with any other red flags, in their hotels were in fact signs of sex trafficking and should have and did see signs of the sex trafficking of Plaintiff that were

___

[25] Five Ways Human Trafficking Training Can Help Hotels Increase Awareness and Prevention (2020), https://hospitalitytech.com/five-ways-human-trafficking-training-can-help-hotels-increase-awareness-and-prevention

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

observable by Defendants.

80. Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their motel properties, including the subject properties, when enacting and enforcing policies and procedures applicable to those motels and when training, educating, and supervising the staff of each motel.

81. Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel staff can identify and respond to sex and labor trafficking, it has become apparent that the decision of Defendants to continue generating revenue from traffickers without taking reasonable steps to identify and prevent trafficking in its motels—or in the face of actual knowledge that its happening—is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

82. The KHATRIS, KPK, INC., KHATRI INC., and KHATRI BROTHERS, LP, by and through their owners, officers, managing agents and employees, all had experience owning, managing, and controlling hotels for several years before Plaintiff was trafficked at their respective Travelodge, Tiki Lodge Hotel, and Budgetel Inn, and each knew the red flags of sex trafficking at hotels at the time Plaintiff was trafficked. Each knew that sex trafficking was common at hotels. Despite that knowledge, each defendant chose to participate in several sex trafficking ventures at their respective hotels, including the venture that trafficked Plaintiff by harboring Plaintiff at their hotels in exchange for room rentals, sometimes directly buying sex from Plaintiff's traffickers and raping Plaintiff, and by taking direct actions to aid, abet, and accommodate Plaintiff's traffickers. The Khatris—through KPK, INC., KHATRI BROTHERS, LP, and KHATRI, INC.—were engaged in a criminal enterprise that involved human trafficking at all three hotels.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

**Traffickers Trafficked Jane Doe for Sex at Defendants' Properties.**

83. From 2015 through 2017, Plaintiff Jane Doe was a victim of sex trafficking and was forced to engage in commercial sex at Defendants properties through force, coercion and fraud, as described more thoroughly in the sections below.

84. Criminal traffickers used physical abuse, torture, forced injection of drugs, as well as assistance and accommodations from Defendants, to control Plaintiff and traffic Plaintiff for sex, including from 2015 through 2017.

85. Plaintiff's trafficker and his associates compelled Plaintiff's obedience by maintaining total control over her day-to-day activities, forcing her to consume and be injected with drugs to ensure she remained docile and at times incapacitated, and by slapping, hitting, strangling, beating, humiliating, manipulating, degrading, exhausting, isolating, and threatening her and threatening her family.

86. Jane Doe was escorted to and from hotels for extended periods of time repeatedly for the purpose of selling her to buyers in exchange for sex with her, which often also abused additional abuse from buyers. Jane Doe was sold like an object. Jane Doe endured violent physical abuse at each hotel and always had visible signs of injuries on her body during the time she was trafficked.

87. Red flags of Jane Doe being trafficked existed at each of the subject hotels and were visible and/or audible to Defendants'' employees and agents, including but not limited to: Jane Doe did not have belongings or luggage that would be expected had she been traveling or vacationing; Jane Doe was taken back to the motels over and over again and sold for sex openly while looking physically abused and drugged; Jane Doe's demeanor and lack of identification, her own money, or any belongings or luggage; Jane Doe was beaten at the motels many times and it was loud; Jane Doe had visible injuries; Jane Doe's inability to make prolonged eye contact or speak freely with employees; Jane Doe's inability to have freedom of movement and the fact that she was

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

being watched and openly controlled, manhandled, and drug around the properties by men; the way Jane Doe's traffickers escorted her to the offices and rooms; the abuse Jane Doe suffered at the motels that employees saw and heard; constant non-guest men parking and going directly to the room where Jane Doe was being sold and leaving some time after, over and over again; sounds of commercial sex; signs of commercial sex like condoms in trash, blood on towels, extra sheets being requested; Jane Doe was being forced to do drugs and that would have been apparent due to her behavior and/or inability to function properly or consent; traffic, money transactions, and abuse that would have been detected on cameras; housekeeping would enter the rooms and saw the signs of sex, commercial sex, blood and drug use; housekeepers and other employees directly witnessed Jane Doe cry, scream for help and otherwise plead for her life but would not help her; the fact that the subject sex trafficking venture was continuous and regular for weeks at a time and they continued to go back over and over again; paying in cash daily for long, extended stays; long-term stays when clearly not on vacation or vacationing; reviews are consistent with employees allowing crime at the property and not caring to intervene or help; and Jane Doe observed other obvious signs of others being trafficked for sex at the properties too while employees were around—if she could see it, the employees there day in and day out could see it all, including the red flags of her trafficking.

88. The fact that Jane Doe was being trafficked at Defendants' properties identified above, was open and obvious to Defendants. Defendants had both actual and constructive knowledge and notice that Plaintiff was being trafficked for sex at their properties.

89. As a direct and proximate result of Defendants participating in the venture that trafficked her, Jane Doe suffered serious and permanent injuries, including but not limited to: over one thousand rapes; cuts; bruising; contusions; swelling; physical

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

hitting, beatings and abuse; being slapped; being restrained; physical sexual harm; forced drug consumption and injection; forced drug addictions; constant and likely permanent effect of drugs and addiction; panic and bodily stress and stressors; lack of proper sleep; lack of proper nutrition; night terrors; nightmares; insomnia; strangulation; anxiety; panic; flashbacks; triggers; somatic reactions to triggers and memories; fear; lack of confidence; lack of trust; depression and unhappiness; mood swings; negative feelings; intimacy issues; relationship and social issues; humiliation; embarrassment; loss of relationships; and diminished outlook on life and the world.

**G6 Defendants Controlled and Oversaw the Subject Motel 6 Properties.**

90. G6 Defendants, through and together with G6 Hospitality Property, LLC, directly owned, operated and controlled the Motel 6 located at 250 S. Walnut Road, Turlock, California 95380 for the entire time Plaintiff was trafficked there, as well as before and after.

91. While Plaintiff was trafficked at the Motel 6 in Modesto at 807 Needham Street, G6 Defendants franchised that property to the THOMPSONS. During all times that the Modesto Motel 6 was franchised, G6 Defendants controlled most day-to-day operations, benefitted from the room rentals, and knew and should have known that trafficking was occurring at the motel when Plaintiff was trafficked there, and knew or should have known about Plaintiff's trafficking that it was benefiting from.

92. G6 Defendants are vicariously liable for the acts, omissions, and knowledge of the THOMPSONS franchisee, as well as their staff, which are the G6 Defendants' actual agents or subagents.

93. Upon information and belief, it is a standard practice in the hospitality industry, followed by G6 Defendants, for Parent companies to set exacting brand quality standards reaching everything from the temperature at which coffee shall be served, to the number of pillows that are placed on the beds, to the décor, types of

payments accepted, required trainings, procedures followed in response to crime and reporting procedures.

94. G6 Defendants provided and provides the THOMPSONS Defendants with signage on and in front of the building. This is done to assure customers that when they check in, they can expect an experience consistent with the standards G6 Defendants and their brand; G6 Defendants represent to the public that it is their business the public is walking into. This brand logo is displayed on everything in the motel, such as pens and paper on the bedside table and staff uniforms worn at the front desk during check-in.

95. G6 Defendants provide their motel branded locations brand name recognition, a marketing campaign, and motel listings in the Global Distribution System and other online agency databases. They also provide access to and management of bookings through their brand-wide central reservation systems, 800 numbers, revenue management tools, brand loyalty programs, internal risk analyses, internal incident reporting processes, trainings and manuals, and company websites. Therefore, bookings, room reservations, and incidents that create liability risk, are primarily controlled by G6 Defendants.[26]

96. G6 Defendants subjected THOMPSONS Defendants to detailed standards and requirements regarding the operation of the THOMPSONS Motel 6 in Modesto through the franchising agreements, detailed written policies and manuals and through other formal and informal protocols, directives, inspections, mandates, reporting, and expectations imposed by the G6 Defendants.

97. Upon information and belief, G6 Defendants require their branded properties, including the subject property, to use a property management system. This

---

[26] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (Apr. 10, 2018), The Origins and Growth of Franchising in the Hotel Industry (lodgingmagazine.com).

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

system is linked to the G6 Defendants' corporate network and data center. This is to, among other things, receive reservations, all related data, safety reports, and process payment transactions. G6 had and has the data for each of its franchisees, including the THOMPSONS. G6 received the incident reports—whether verbal or in writing, including and especially related to police activity, calls for service, warrants, and surveillance footage pulled for law enforcement at the subject Modesto Motel 6.

98. Upon information and belief, G6 Defendants require that incident reports related to crime and safety not be documented on paper and instead be verbally reported up the chain of command so as to try to avoid documenting their knowledge of the same. However they have a policy to report up and are notified of each instance.

99. Upon information and belief, per the relevant franchise agreements, G6 Defendants may enforce their brand standards through periodic and regular inspections of the motel locations, backed up with the ultimate threat of termination of the agreement.[27] G6 Defendants keep regional managers and other employees responsible for overseeing their franchised properties and are well aware of what is going on at each franchised property, and were aware at all relevant times alleged herein. Reporting procedures mandate that THOMPSONS would have had to and did report safety issues and crime at the hotel to direct G6 area managers that were in charge of managing the Modesto Motel 6. Based upon information and belief, G6 Defendants have procedures to *not* document certain safety reports and issues—and instead to handwrite and shred and communicate verbally— so as to try to avoid or minimize liability; however, the information was relayed and G6 Defendants' nonetheless and their liability remains even if their employees followed such policies.

---

[27] Many of the franchise disclosure documents, which outline the policies and procedures of franchise agreements can be accessed publicly on https://fddexchange.com/view-fdd-docs.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

**Thompsons and G6 Hospitality Property, LLC Defendants Acted as Actual Agents of G6 Defendants.**

100. G6 Defendants are vicariously liable for the acts, omissions, and knowledge of the THOMPSONS and G6 HOSPITALITY PROPERTY, LLC, their staff, and staff of all of the locations named herein, which are G6 Defendants' actual agents or subagents, including employees.

101. G6 Defendants subjected the THOMPSONS and G6 HOSPITALITY PROPERTY, LLC and the owners to detailed standards and requirements regarding the operation of the Motel 6 locations named and described herein through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, inspections, rules, reporting, and expectations imposed by the G6 Defendants.

102. Upon information and belief, at all times relevant herein, G6 Defendants and the THOMPSONS, and each of them, were the apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible staff, staff, apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of each other and were acting as such within the course, scope and authority of said agency and employment, and that each of the Defendants, as aforesaid, when acting as a principal or agent, was negligent, including but not limited to, in the hiring, training, retention, and supervision of each and every other Defendant as an agent, servant, employee, assistant, and consultant.

103. Upon information and belief, every act or omission of the G6 Defendants and THOMPSONS and their apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible servants, servants, apparent ostensible staff, staff, apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of their co-defendants, whether or not within the scope of their agency,

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

was ratified by the other defendants.

104. G6 Defendants obscure the full extent of control they exercise over their Motel 6 Franchisee locations and individual locations by treating the contracts, manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of the policies and manuals in particular. They keep their contracts vague while reserving their right to exert control, inspect properties and mandate standards, as well as have the right to end contracts at their discretion.

105. Upon information and belief, the standards that G6 Defendants imposed on the THOMPSONS:

    a. Did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools THOMPSONS used at their property;

    b. Covered virtually all aspects of hotel operations, including internal operating functions;

    c. Dictated the specific manner in which THOMPSONS Defendants and hotel staff had to carry out most day-to-day functions at their subject Motel 6; and

    d. Significantly exceeded what was necessary for G6 Defendants to protect its registered trademarks.

106. G6 Defendants were in an agency relationship with the THOMPSONS Defendants and each other. Upon information and belief, this agency relationship was created through G6 Defendants exercise of an ongoing and systemic right of control over THOMPSONS Defendants and each other, including the means and methods of how THOMPSONS Defendants and each other conducted daily business through one or more of the following:

    a. Sharing profits;

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

b. Requiring THOMPSONS Defendants to use Motel 6's customer rewards program;

c. Hosting online bookings on G6 Defendant's and Motel 6's developed, owned, and operated domain;

d. Regulating internet access for guests;

e. Setting employee wages;

f. Making decisions about employment and budgets, including for security and management;

g. Advertising for management and local positions;

h. Standardized training and methods for THOMPSONS Defendants staff;

i. Standardized and strict rules of operation;

j. Oversight in hiring and/or terminating staff and managers;

k. Building and maintaining the THOMPSONS Defendants properties;

l. Reporting and oversight requirements to and from G6 Defendant area managers;

m. Fixing prices; and

n. Creating advertising campaigns and unrealistic expectations of safety for guests.

107. G6 Defendants held themselves out and represented to the public as possessing authority to act on the subject Motel 6s' behalf. G6 Defendants held themselves out and represented to the public that they owned and controlled the subject Motel 6s.

108. In addition to the ways described above, upon information and belief, at all relevant times, G6 Defendants exercised and reserved the right to exercise systemic and pervasive control over THOMPSONS Defendants' and G6 HOSPITALITY

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

PROPERTY, LLC's day-to-day operation of the subject Motel 6s, including in the following ways:

a. G6 Defendants required the THOMPSONS and G6 HOSPITALITY PROPERTY, LLC and their management to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for G6 Defendants to protect their registered trademarks;

b. G6 Defendants provided training for hotel management and select hotel staff on-site and had control over the content of such trainings;

c. G6 Defendants required all motel staff to participate in training it created through an online learning platform it controlled and maintained;

d. G6 Defendants controlled training provided by the THOMPSONS and G6 HOSPITALITY PROPERTY, LLC to motel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;

e. G6 Defendants retained sole discretion to determine whether all training had been completed satisfactorily;

f. For certain products and services that the THOMPSONS and G6 HOSPITALITY PROPERTY, LLC were required to purchase to operate the subject Motel 6s, G6 Defendants designated approved vendors and prohibited the locations from purchasing goods and services from anyone other than an approved vendor;

g. G6 Defendants required its franchisees, including the owners of the subject Motel 6s to sign a technology agreement governing the terms under which they must procure and use technical services and software

32

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

while operating the motels. Defendants were required to install, and use certain brands, types, makes, and/or models of hardware, software, peripheral equipment, and support services to perform internal operating functions at the motel;

h. G6 Defendants set required staffing levels for the Motel 6s named herein;

i. G6 Defendants established detailed job descriptions for all positions in Motel 6s and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so;

j. G6 Defendants set requirements for the hiring process used by the owners and managers at the Motel 6s and oversaw employee discipline processes and termination decisions;

k. G6 Defendants provided benefits for staff that worked directly at the Motel 6s and those that managed and controlled it;

l. G6 Defendants required Defendants and its Motel 6s to use a customer resource management program maintained and operated by the G6 Defendants;

m. G6 Defendants controlled channels for guests to report complaints or provide feedback regarding the subject Motel 6s and directly participated in the response and/or supervised the response to customer complaints or other feedback. G6 Defendants retained the right to provide refunds or other compensation to guests and to require its direct owners and/or franchisees, including the THOMPSONS and G6 HOSPITALITY PROPERTY, LLC to pay associated costs;

n. G6 Defendants generated reports and analysis of guest complaints and online reviews for the subject Motel 6s;

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

o. G6 Defendants required the Motel 6s owners and operators to use a Guest Relations Application owned, operated, and maintained by G6 Defendants to manage all guest data and information. G6 Defendants could use the backend of this system to analyze data and generate reports and did so;

p. G6 Defendants set detailed requirements for insurance that the THOMPSONS Defendants must purchase and retain the right to purchase insurance for the THOMPSONS Defendants and to bill them directly for that insurance if G6 Defendants determine that they have not purchased adequate insurance;

q. G6 Defendants regularly audited the books and records of THOMPSONS Defendants and for the subject Motel 6s;

r. G6 Defendants conducted frequent and unscheduled inspections of the subject Motel 6s, including overnight stays;

s. G6 Defendants retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of any agreements if the THOMPSONS Defendants, or any of its franchisees, violated any of the G6 Defendants' detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the THOMPSONS and the subject Motel 6s;

t. G6 Defendants controlled all marketing for the subject Motel 6s and prohibited them from maintaining any online presence unless specifically reviewed and approved by the G6 Defendants;

u. G6 Defendants imposed detailed recordkeeping and reporting requirements on THOMPSONS Defendants and/or its Motel 6s regarding virtually all aspects of motel operations;

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

v. G6 Defendants supervised and controlled day-to-day operations of the subject Motel 6s through detailed information and extensive reports that it obtained through the property management system and other software systems it required the THOMPSONS Defendants to use; and

w. G6 Defendants retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations.

109. In 2016, a Los Angeles Motel 6® became such a hub for human trafficking and other criminal activity that G6 Defendants paid to settle a public nuisance lawsuit related to such trafficking filed by the City of Los Angeles.[28]

110. The Los Angeles nuisance settlement required G6 Defendants' to change policies that were facilitating sex trafficking.[29] G6 Defendants' knew from that lawsuit, from many prior lawsuits, from reports from their branded locations and from their personal knowledge about sex trafficking at their locations that their policies were facilitating sex trafficking. Based on information and belief, at all times relevant in this Complaint and currently, G6 Defendants' have failed to adequately implement and enforce such changes.

111. Public statements of G6 Defendants confirm that they knew before and during the sex trafficking of Jane Doe that sex trafficking is a problem in the hotel industry, sex trafficking was occurring at their branded hotels, and that they retained control over the response of their branded hotels to this problem. G6 Defendants' recognized that "[t]raffickers often use hotels and motels for sex trafficking activities due to the privacy extended to guests."[30] They also acknowledged the significant role

---

[28] Motel 6 pays $250,000 to settle human trafficking suit (Aug. 31, 2017), https://www.cbsnews.com/news/motel-6-pays-250000-to-settle-human-trafficking-suit/.
[29] *Id*.
[30] G6 HOSPITALITY ANTI-HUMAN TRAFFICKING TRAINING, http://g6propertycollateral.com/wp-content/uploads/2020/02/G6_TheRoomNextDoor_Training_V12b_NoFacilitator.pdf

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

G6 Defendants' have in the three D's: deterring, detecting, and disrupting sex trafficking in their branded hotels.[31]

112. G6 Defendants acknowledge on its website that it controls the policies, procedures, training, and codes of conduct that have facilitated sex trafficking at its Motel 6 Brand hotels, including the subject Motel 6 Defendant locations where Jane Doe was trafficked and abused.[32]

113. G6 Defendants' claim to take a zero tolerance policy against sex trafficking at its Motel 6 Brand locations, but G6 Defendants intentionally ensure its hotels are "strategically located . . . close to airports, freeways, and other thoroughfares" making them attractive venues for trafficking and compelled prostitution.[33] For years, G6 Defendants' have chosen to place their branded locations, including the subject locations, in known trafficking areas/hubs. They have scouts that specifically choose these locations after gathering data regarding the crime and trafficking rates in the area as part of a larger analysis. G6 Defendants then weigh their risk and knowingly choose to put their branded motels on or near "the blade" or streets specifically known for commercial sex and sex trafficking.

114. At the time of the trafficking alleged herein and currently, G6 Defendants' policies and procedures also provided the means for sex traffickers to harbor victims by providing low-rate rooms, accepting cash as payment, relaxed identification(ID) policies, no or inadequate parking oversight, not requiring IDs for persons entering and exiting the hotel, not providing adequate security, and providing multiple room keys for a single person.

---

[31] *Id.*
[32] https://g6hospitality.com/combating-human-trafficking/
[33] Motel 6 – An Iconic American Brand, https://g6hospitality.com/our-brands/#about-motel-six (last visited March 27, 2024).

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

**G6 Defendants and the THOMPSONS Knew Victims, Including Plaintiff, Were Being Trafficked for Sex at Their Properties for Years.**

115. Upon information and belief, before and at the time Jane Doe was trafficked at the subject Motel 6s, each of the G6 Defendants and THOMPSONS Defendants monitored criminal activity occurring at G6 branded hotels and were aware of activity indicating commercial sex, sex trafficking and related crimes occurring at those branded hotels, including the specific hotel locations where Jane Doe was trafficked.

116. Scores of news stories from across the United States highlight G6 Defendants' facilitation of sex trafficking and certainly establish that G6 Defendants' and THOMPSONS Defendants knew, or should have known, of the use of Motel 6 hotels, including the subject hotels, for sex trafficking.

117. Information that has become public through news stories establishes the entrenched and pervasive nature of G6 Defendants' and THOMPSONS Defendants role in providing a venue where sex trafficking has continued unabated for years. Defendants have provided the means necessary for traffickers to traffic victims, including Jane Doe. Among notable press involving the frequent use of Motel 6 hotels for illegal trafficking activity, the following has been noted over the years:

a. In late 2003, a trafficker set up a sex trafficking venture at a Motel 6 in Connecticut in which two (2) young women were sold for sex eight (8) to ten (10) times per day.[34]

b. In April 2009, a sex trafficking venture operated out of a Motel 6 in Toledo, Ohio.[35]

---

[34] Amy Fine Collins, Sex Trafficking of Americans: The Girls Next Door, Vanity Fair (May 2011), https://www.vanityfair.com/news/2011/05/human-trafficking-201105

[35] Five Toledoans Indicted On Sex Trafficking Charges, ABC7Chicago.com (Nov. 7, 2010), https://abc7chicago.com/archive/7771888/.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

c. In approximately September 2011, sex traffickers set up an operation at a Motel 6 in Toledo, Ohio to sell fifteen (15) and sixteen (16) year old girls for sex.[36]

d. From approximately 2012 through October 2014, two (2) men engaged in a criminal sex trafficking venture of children which operated in part out of a Motel 6 in Harvey, Illinois.[37]

e. Police rescued an eighteen (18) year old girl from a sex trafficker in February 2012, at a Motel 6 in Portland, Oregon.[38]

f. The FBI investigated and arrested several individuals in December 2012, for the victimization and human trafficking of several young women and a juvenile at a Motel 6 in Madison, Alabama.[39]

g. The Orange County Human Trafficking Task Force busted a criminal enterprise in December 2012 that was selling women for sex out of a Motel 6 in Anaheim, California.[40]

h. Two men were arrested in March 2015 for sex trafficking a fifteen (15) year old girl at Motel 6 in Austin, Texas.[41]

---

[36] Mark Reiter, Two Toledoans Accused Of Juvenile Sex Trafficking, The Blade (Jun. 1, 2010), https://www.toledoblade.com/Courts/2012/06/02/2-Toledoans-accused-of-juvenile-sex-trafficking-1.html

[37] Press Release, U.S. Dept. of Justice, Two Aspiring Rappers Charged With Operating Sex-Trafficking Ring In Chicago And Suburbs (Jan. 15, 2016), https://www.justice.gov/usaondil/file/813771/download.

[38] Press Release, U.S. Dept. of Justice, Tacoma Pimp Sentenced To 25 Years For Sex-Trafficking Two Victims (Nov. 20, 2013), https://www.justice.gov/usao-or/pr/tacoma-pimp-sentenced-25-years-sex-trafficking-two-victims.

[39] FBI Investigates Human Trafficking At Madison Hotel, WHNT News 19 (Dec. 7, 2012), https://whnt.com/2012/12/07/fbi-investigates-human-trafficking-at-madison-motel/.

[40] Suspects Busted in Anaheim Sex Ring, ABC13 Eyewitness News (Dec. 5, 2012), https://abc13.com/archive/8909784.

[41] Lindsay Bramson, Local Teen Saved from Sex Slavery; Two Charged, KXAN Austin (Mar. 6, 2015), https://www.kxan.com/news/local/austin/local-teen-freed-from-sex-slavery-two-charged/1049580764.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

i. In March 2015, police arrested a man for sex trafficking a runaway seventeen (17) year old at a Motel 6 in Warwick, Rhode Island.[42]

j. Over a fourteen (14) month period ending in approximately April 2015, at the same Motel 6 in Warwick, Rhode Island had seventy-five (75) arrests on its property for crimes including sex-trafficking.[43]

k. Seven (7) people were indicted in January 2016, by a Colorado grand jury for sex trafficking children from 2014 through the summer of 2015, out of hotels in Denver, Colorado, including a Denver area Motel 6.[44]

l. In the summer of 2015, a woman was arrested at a Motel 6 in Great Falls, Montana where she was involved in sex trafficking a seventeen (17) year old girl.[45]

m. A married couple was indicted in June 2015, for their roles in sex trafficking minor children ages seventeen (17), sixteen (16), and fifteen (15) years old out of a Motel 6 in Everett, Washington.[46]

n. In Tuscaloosa, Alabama police rescued a fourteen (14) year old girl from a Motel 6 in June 2015, and a grand jury subsequently charged her assailant with human trafficking and rape.[47]

---

[42] Amanda Milkovits, Massachusetts Man Accused of Trafficking Teen In Warwick Motel, NewportRI.com (Mar. 24, 2015), https://www.newportri.com/article/20150324/NEWS/150329666.

[43] Sarah Kaplan, Crime-Ridden Motel 6 In R.I. Will Hand Over Guest List To Police, The Washington Post (Apr. 28, 2015)https://www.washingpost.com/news/morning-mix/wp/2015/04/28/crime-ridden-motel-6-in-r-i-will-hand-over-guest-list-to-police/?utm_term=.a804ce3f32a8.

[44] Hsing Tseng, Seven Indicted by Colorado Grand Jury In Child Sex Trafficking Ring Bust, Fox 31 Denver (Jan. 6, 2016), https://kdvr.com/2016/01/06/7-indicted-by-colorado-grand-jury-in-child-sex-trafficking-ring-bust/.

[45] Andrea Fisher, Woman Caught Up In Human Trafficking Ring Pleads Guilty (Aug. 29, 2016), https://www.greatfallstribune.com/story/news/local/2016/08/29/woman-caught-human-trafficking-ring-pleads-guilty/89566374/.

[46] Diana Hefley, County Investigating 45 Ongoing Human Sex Trafficking Cases, Herald Net (Jun. 26, 2015), https://www.heraldnet.com/news/county-investigating-45-ongoing-human-sex-trafficking-cases/.

[47] Tuscaloosa Man Charged With Rape And Trafficking Mississippi Teen, News Mississippi (Nov. 7, 28 2014), https://newsms.fm/tuscaloosa-man-charged-human-trafficking-mississippi-teen/.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

o. In approximately July 2015, sex traffickers sold a fifteen (15) year old girl for sex at a Motel 6 in Pismo Beach, California.[48]

p. In approximately March 2013, sex traffickers began operating a sex trafficking venture out of a Motel 6 in Bangor and Portland, Maine.[49]

q. Beginning in approximately May 2013, a fifteen (15) year old runaway was trafficked for sex out of the Motel 6 on Caton Avenue in Baltimore, Maryland.[50]

r. In Richmond County, Georgia a man was arrested at a local Motel 6 in October 2013 and charged with sex trafficking of two young women.[51]

118. Ultimately, hundreds to thousands of traffickers involved with thousands of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of G6 branded locations owned and controlled by G6 Defendants.

119. G6 Defendants have been served with numerous warrants related to trafficking investigations over the years and before and during the time Plaintiff was being trafficked at the subject Motel 6 properties.

120. G6 Defendants are currently litigating approximately one-hundred forty cases around the country involving their participation in sex trafficking ventures at their properties from the late 1990s to within the past year or so.

---

[48] Matt Fountain, Four Accused Of Pimping Out 15-Year-Old Girl In SLO Will Stand Trial, SanLuisObispo.com (May 5, 2016), https://www.sanluisobispo.com/news/local/article75832962.html.

[49] Danielle McLean, What Drives Maine Sex Traffickers' Inhumanity, Bangor Daily News Maine Focus (Sept. 12, 2016), https://bangordailynews.com/2016/09/12/mainefocus/what-drives-maine-sex-traffickers-inhumanity/.

[50] Anne Kramer, Man Faces Prison Time For Sex Trafficking Baltimore Teen, WBAL News Radio (Apr. 10, 2014), https://www.wbal.com/article/106578/2/man-faces-prison-time-for-sex-trafficking-baltimore-teen.

[51] UPDATE: Man Arrested For Sex Trafficking, WRDW.com On Your Side, (Oct. 3, 2013), https://www.wrdw.com/home/headlines/Man-arrested-for-sex-trafficking-226301261.html.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

121.    This sampling of news stories, reviews, lawsuits and other public information establishes that, at the time Plaintiff was trafficked at the subject properties, G6 Defendants and THOMPSONS Defendants knew or should have known that:

    a. There was widespread and ongoing sex trafficking occurring at the G6 branded properties;

    b. Sex trafficking was a brand-wide problem for G6 Defendants;

    c. G6 franchisees and G6's motel staff were not taking reasonable steps to identify, intervene, prevent and respond to known or probable sex trafficking occurring at their motel properties and were facilitating sex trafficking and harboring trafficking victims at the branded motel properties; and

    d. G6 and its franchisees were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring and being facilitated by their employees and agents.

122.    G6 Defendants and THOMPSONS Defendants were specifically aware that sex trafficking was widespread and ongoing at the subject Motel 6s.

123.    Internet reviews for the subject Motel 6s named herein, which G6 Defendants and THOMPSONS Defendants managed, controlled, responded to and monitored, show the pervasiveness of sex trafficking before and after Plaintiff was trafficked.

    a. For over a decade, online reviewers describe prostitutes or "girls" openly soliciting in parking areas and hallways, and reviewers describe the property as a place where "pimps sit in the parking lot." These are first-hand reviewer claims that appear repeatedly across years. Reviewers describe drug use, dealers, and "cops in and out all night," often in the same posts that mention prostitution.

b. TripAdvisor and Yelp reviews include strong warnings ("DANGEROUS," "DO NOT STAY HERE") from guests who describe hearing or seeing violent encounters, being alarmed by drug-involved customers, and encountering aggressive or threatening people on site. TripAdvisor reviewers report the property as "dangerous" and describing prostitution/drugs in the parking lot/hallways.

124. G6 Defendants and THOMPSONS Defendants knew Plaintiff was being trafficked at the locations named herein by the many red flags present and observable to them during the trafficking venture's continued stays. Plaintiff's trafficker paid for stays in cash, oftentimes was not required to present ID for himself, paid for extended stays on a day-to-day basis, requested rooms away from other guest and/or the front desk, obvious signs of illegal drug use, obvious visible signs of physical abuse, do not disturb signs always up, frequent requests for new linens and towels but not letting cleaning staff into the rooms, men waiting out of the room while other men were inside with Plaintiff for short periods of time.

125. JANE DOE arrived and left the Motel 6s without belongings and luggage that would be expected had she been traveling or vacationing. The staff knew her trafficker and would have recognized that he continued to bring JANE DOE and other victims back to the Motel 6s over and over again.

126. The Motel 6 staff interacted with Jane Doe throughout her trafficking at those properties and during those interactions, Jane Doe looked unhealthy, unhappy, bruised, battered, injured and unwell.

127. Jane Doe was loudly beaten at the Motel 6s. Screams, shouting and sounds of abuse and injury with and to Jane Doe was loud and had to be heard around the property, including by employees working in the course and scope of their employment for the THOMPSONS and G6 Defendants whom sometimes directly witnessed the

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

abuse and signs of Jane Doe being trafficked for sex.

128. On-site employees of the Subject Motel 6 Properties, acting within the course and scope of their employment, observed clear indicators of Jane Doe's trafficking and reported those clear indicators and red flags through established corporate reporting channels to the THOMPSONS and G6 Defendants.

129. At the time Plaintiff was being trafficked for sex at the Subject Motel 6 Properties, G6 Defendants became directly aware of the red flags of sex trafficking ventures, including the venture that trafficked Plaintiff, through online reviews and guests calling and reporting the signs of trafficking directly to G6 Defendants and/or through corporate reporting channels, including online reviews and corporate phone numbers, established by G6 Defendants for that exact and apparent purpose.

130. The calls for service for law enforcement at each one of Motel 6s show multiple calls from guests for suspicious circumstances, prostitution, suspicious vehicles, domestic violence, battery, sexual assault, threats, disturbances, and welfare checks. These calls for service would have put THOMPSONS Defendants as well as G6 Defendants on notice of the crimes occurring at their properties consistent with trafficking.

131. Despite directly witnessing Jane Doe cry, scream for help, and plead for her life, housekeeping staff and other employees at the Motel 6 locations consciously failed and refused to intervene or provide assistance. It was the THOMPSONS and G6 Defendants' policy to allow, facilitate and accommodate sex trafficking at the Subject Motel 6 Properties to obtain a benefit in the form of money for room rentals and goods purchased.

132. At all times relevant, the THOMPSONS and G6 Defendants gave Jane Doe's trafficker and his associates the rooms they wanted in the locations they wanted; allowed cash payments daily; did not require IDs for all persons; told abusers to be

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

quiet when abusing Jane Doe instead of kicking them out or calling police; turned a blind eye to criminal activity and copious drug use and sales; chose not to call the police; and when other guests reported their concerns regarding the abuse and/or trafficking of Plaintiff and others, the THOMPSONS and G6 Defendants would tell traffickers and/or abusers to be quiet and/or would choose not to take any action.

**G6 Defendants Knowingly Benefited from Participation in a Venture with the THOMPSONS Defendants and Plaintiff's Other Traffickers.**

133. G6 Defendants owned some of their Motel 6 locations directly and franchised others. After owning some for a long time, G6 Defendants decided to lend their name and likeness to third party owners while the building and operations are under the brands' supervision and control. This is done through brand standards, franchise agreements, and maintaining control over operations. This allows the parent brand to exchange the high risk that is inherent in owning an asset like a motel for the low risk associated with owning a property contract or franchise contract and still profiting and retaining control of day-to-day operations. Because of this, the motel locations and parent brands are inextricably intertwined. Here, the Modesto Motel 6 at issue and the THOMPSONS and those that owned and controlled it are inextricably intertwined with G6 Defendants. They operate together. So in this case, G6 Defendants cannot escape liability.

134. Additionally, the subject Turlock Motel 6® location where Plaintiff was trafficked was directly owned and operated by a G6 Defendant entity, G6 Hospitality Property, LLC so G6 Defendants are intertwined with it so as to be operating as a single business-- since G6 Defendants essentially all operate together and share the same information, data, profits, revenue and are controlled by the same individual people, all profiting off of the Motel 6 revenues.

135. The average customer does not see the franchisor/franchisee relationship.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

The parent brand gives the franchisee or individual property its identity. That happened here. The parent brand provides the signage that assures customers that if they check into that motel they can expect the standards consistent with the parent brand. That also happened here.

136. The Motel 6s are advertised as Motel 6s—no advertising exists for the underlying companies. The G6 Defendants hold themselves out to the public as the owners and operators of the properties. Brand requirements and rules are contractual with the power to control weighed heavily toward the corporate parent brand. The Brand, here G6 Defendants, retain control over the properties and to inspect properties, dictate operations and terminate agreements. That happened in this case with both Motel 6s.

137. At all times of trafficking alleged herein and currently, booking and room reservations are controlled by the corporate parent brands, the G6 Defendants.

138. Upon information and belief, at all times of trafficking alleged herein and currently, the franchised Motel 6 and THOMPSONS Defendants paid a percentage of their revenues from room rentals back to the G6 Defendants and was and is required to develop and maintain the property in accordance with the parent brand G6 Defendants' standards as they are laid out in the franchise agreements and other handbooks, rules, standards and written and verbal policies. G6 retains the right of entry and inspection, response to crime, response to trafficking, and trainings related to the same. That was the case here.

139. Upon information and belief, per the agreements, the G6 Defendants could at all relevant times, and can, enforce standards through periodic inspections and even termination of the franchise agreement if the franchise hotel is found to be inadequate, unsafe, or operating in violation of any laws. The right of the G6 Defendants to enforce their brand standards, including safety standards, is not just their right but their

COMPLAINT FOR DAMAGES AND INJURIES

responsibility. Here, G6 Defendants had employees in charge of inspecting and that did inspect the subject Motel 6 properties at relevant times when plaintiff was being trafficked there and who did see all of the red flags of Plaintiff being trafficked and who knew or should have known that she, as well as several others, were indeed being trafficked for sex for long periods of time and regularly at their Motel 6 locations identified herein.

140. At all times of trafficking alleged herein, G6 Defendants dictated franchisee policies related to safety, security, human trafficking, employee training and franchisee's response, including at the subject Motel 6 in Modesto. As to the properties they owned directly and not jointly, they dictated every single aspect of day-to-day operations and are directly responsible for their employees', managers', supervisors', regional managers', officers', directors' and agents' conduct in knowingly facilitating, aiding, abetting, and allowing trafficking to occur at the subject Motel 6 in Turlock for profit.

141. Upon information and belief, at all times of trafficking alleged herein, reservation information for rooms at the subject Motel 6s passed through a system operated and managed by the G6 Defendants. G6 Defendants had all data and information related to the people operating the trafficking ring at the subject Motel 6s that trafficked Plaintiff.

142. Defendants profited from the sex trafficking of Jane Doe when they rented rooms to Jane Doe and/or her trafficker when they knew or should have known that human trafficking was occurring and that she was being trafficked due to several red flags being apparent and visible each occasion, for several days at a time, repeatedly over the course of years.

143. Defendants knowingly benefited from the steady stream of income that Jane Doe's trafficker, and many other traffickers, brought to their motels and motel

brands. Defendants profited from each and every room at the hotels that they owned and/or controlled that Jane Doe's trafficker rented where Jane Doe was harbored and maintained for the purpose of sex trafficking.

144. Defendants facilitated the trafficking through its practices, policies, and procedures. They failed to take appropriate action to prevent the trafficking of individuals, including Jane Doe, for sex so they could continue to profit from the room rentals, and business that trafficking brings. They accommodated Plaintiff's trafficker's requests, allowed cash payments for extended periods on a daily basis, allowed men to parade in and out despite not being guests, allowed money exchanges for the commercial sex to take place in front of them, and watched and heard physical abuse and rape occurring daily while Plaintiff was trafficked at each property for long periods of time regularly.

145. G6 Defendants and THOMPSONS Defendants owned and operated the subject Modesto Motel 6 while buyers paraded in and out of rooms rented for the purpose of trafficking Jane Doe. G6 Defendants owned and operated the subject Motel 6 in Turlock while buyers paraded in and out of rooms rented for the purpose of trafficking Jane Doe. Their staff and agents, some of whom lived at the properties while Plaintiff was being trafficked there— observed and should have observed the buyers parading in and out of its hotel rooms to engage in the sex trafficking of Jane Doe. Their staff and agents observed or should have observed the trafficking occurring regularly and for multiple days at a time at the subject hotel locations but allowed it so they could profit.

146. Jane Doe's trafficking at the subject Motel 6 locations was a result of G6 Defendants' and the THOMPSONS Defendants' participation in a venture with each other as well as Jane Doe's criminal traffickers. If G6 Defendants and the THOMPSONS Defendants had not continued participating in a venture that they knew or should have

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

known violated 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe's trafficking at the subject hotel locations and Plaintiff would not have suffered the harm that she did there.

147. Despite its actual and constructive knowledge that the venture that was trafficking Plaintiff at its properties was engaged in was in violation of 18 U.S.C. §§1591(a) and 1595(a) through the conduct of motel staff and the widespread trafficking at the subject motel locations named herein, as well as all of the red flags of trafficking known to them and being displayed at the time, G6 Defendants participated in the venture by continuing to associate and act in joint venture with the motel staff, the THOMPSONS Defendants, and their employees and agents to operate the Motel 6 locations named herein in a way that it knew or should have known would lead to further violations of 18 U.S.C. § 1591(a) including trafficking of victims like Jane Doe, and in particular in her trafficking at their properties.

148. G6 Defendants and the THOMPSONS Defendants financially benefited from renting rooms to Jane Doe and Jane Doe's traffickers on numerous occasions since they benefited every day that Plaintiff was forced to engage in commercial sex at each of the Motel 6s regularly for years.

149. G6 Defendants participated in this venture through the conduct described herein as they were jointly responsible for relevant aspects of motel operations, including and especially those relevant to preventing sex trafficking, and in the policies and accommodations that specifically were done to allow and facilitate the trafficking, at the subject motel locations.

150. Plaintiff was subjected to significant and overt abuse and forced and coerced commercial sex at the subject Motel 6 properties. Plaintiff's trafficker would scream at her often and drag her in and out of the rooms. Cleaning staff and front desk employees, some of whom represented themselves as managers, directly saw Plaintiff

COMPLAINT FOR DAMAGES AND INJURIES

Singleton Schreiber
591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
(619) 771-3473

being abused by her trafficker, acknowledged it and chose to do nothing.

151. Based upon information and belief, G6 Defendants were notified of trafficking at the subject Motel 6s and instructed the employees and staff, including their own, who worked at the properties to do nothing in response.

152. G6 Hospitality Property, LLC and G6 Defendants, as well as the THOMPSONS directly saw all of the red flags of Plaintiff's trafficking during her trafficking at the Motel 6s at various times throughout her being trafficked there. Together and from the top down, the decision was to continue to accommodate traffickers and to continue benefiting from the room rentals that it knew were for the purpose of trafficking Plaintiff and others.

**Wyndham Controlled and Oversaw the Subject Travelodge Property**

153. Wyndham claims it is "the world's largest and most diverse hotel company, encompassing more than 8,400 hotels across 24 brands in 95 countries." It boasts about its twenty-five (25) brands—all of which it created, controlled at all relevant times, and sells to the public by and through its franchisees and employees.

154. Since well before Plaintiff was trafficked, Wyndham knew that sex trafficking was prevalent and pervasive at its hotels, including at the subject Travelodge.

155. Plaintiff was trafficked regularly for several days to weeks at a time at the subject Travelodge by Wyndham in Turlock, California from 2015 through 2017. Based upon information and belief, during that time, KPK, Inc. contracted with Wyndham to own the subject Travelodge and Wyndham controlled the manner in which the property was staffed, operated, managed and responded to crime.

156. At all relevant times, Wyndham set up, designed, had an ownership interest in, supervised, managed, controlled, and/or operated the subject Travelodge.

157. Wyndham represents that its "Board of Directors, management team and

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

subject matter experts throughout the Company are actively engaged in the execution of Wyndham's" social strategy, protecting human rights against trafficking, and its policies and procedures regarding the same. Wyndam publicly represents that "[t]hroughout the year, Wyndham actively engages with team members, [and] . . . franchisees . . .." Wyndham conducts regular inspections and gets regular reports about the operations and issues at each of its branded properties, including at all relevant times the Travelodge where Plaintiff was trafficked. Based upon information and belief, Wyndham can and does fine, end a contract, and take other remedial actions if its franchisees do not comply with the standards and rules it sets.

158. Wyndham sets rules to make money. Here, Wyndham's rules that it chose to enforce at the subject Travelodge required the employees to accommodate Plaintiff's traffickers and the trafficking of Plaintiff despite actual and constructive knowledge and notice that Plaintiff was being trafficked in those rented rooms at the subject Travelodge.

159. While Plaintiff was trafficked at the Travelodge, Wyndham franchised that property to the Khatris through KPK, Inc. During all times that the Travelodge was franchised, Wyndham controlled most day-to-day operations, benefitted from the room rentals, and knew and should have known that trafficking was occurring at the motel when Plaintiff was trafficked there, and knew or should have known about Plaintiff's trafficking that it was benefiting from.

160. Wyndham is vicariously liable for the acts, omissions, and knowledge of the Khatris and KPK, Inc., as well as their staff, which are Wyndham's actual agents or subagents.

161. Upon information and belief, it is a standard practice in the hospitality industry, followed by Wyndham, for Parent companies to set exacting brand quality standards reaching everything from the temperature at which coffee shall be served, to

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

the number of pillows that are placed on the beds, to the décor, types of payments accepted, required trainings, and procedures followed in response to crime and reporting procedures.

162. Wyndham provided KPK, INC. with signage on and in front of the building. This is done to assure customers that when they check in, they can expect an experience consistent with the standards of Wyndham and their brand. It is done to represent the property as a property that Wyndham controls. This brand logo is displayed on everything in the hotel, such as pens and paper on the bedside table and staff uniforms worn at the front desk during check-in. They even named it "Travelodge *by Wyndham." (emphasis added)*

163. Wyndham owns several brands, including Travelodge by Wyndham®, and controls markets, brands, and holds itself out as the owner and controller of, each. It has numerous hotels in the State of California currently that it profits from. It has a rewards program and credit card with points through which it sends people to its branded properties, including Travelodge by Wyndham and at all times relevant, the subject Travelodge by Wyndham. It allows the public, including traffickers, to book rooms at its branded properties through its website and provides offers deals online for its properties, including the subject Travelodge at all times relevant.

164. Wyndham and KPK, INC. defendants are a single and joint employer with a high degree of interrelated, intermingled, and unified operations at the Travelodge by Wyndham property where Plaintiff JANE DOE was trafficked for sex. Wyndham and KPK, INC. each share the common policies and practices complained of herein. Wyndam controls the reservations, reservations systems, guest data systems and is notified about all criminal and/or safety reports and complaints. Wyndham has the right of control over those aspects of the operations at the subject Travelodge, as well as basic, day-to-day operations.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

165. Wyndham advertises its Travelodge branded properties as "Your Basecamp for Adventure." It started the brand in 1940 and has always claimed to put them "near parks" but in reality many are placed directly in trafficking and prostitution hot spots known as "the blade" in each city—parks are far and few between. Wyndham fails to warn guests that it has chosen to place many Travelodge locations directly in areas known for sex-trafficking. This decision was and is intentional—Wyndham chooses to profit from areas known for sex trafficking and in turn, from the sex trafficking ventures it knows are operating in those areas.

166. In 2017, a 16-year-old girl escaped from being sex trafficked for days at the subject Travelodge where she was forced to engage in sex acts with numerous men per day. The police served WYNDHAM and KPK, INC. with a search warrant for the subject Travelodge, including surveillance video. Defendants had surveillance and could see all of the red flags of what was going on but chose to allow it to happen rather than intervene. They did the same with regard to the trafficking venture that was simultaneously trafficking Plaintiff there. The trafficker that rented the room from WYNDHAM and KPK, INC. to traffic the minor at their Travelodge property was arrested and convicted; Defendants WYNDHAM and KPK, INC. continued business as usual and continued to allow victims, including Plaintiff, to be trafficked at the subject property without any accountability for the role they played in trafficking that girls and so many others, including Plaintiff.

167. In January of 2019, law enforcement agencies from around Stanislaus County joined in the statewide effort — Operation Rebuild and Reclaim — to stop human trafficking, which resulted in arrests of 33 individuals over a three-day period. The operation was conducted at the Clarion Inn at 1612 Sisk Road in Modesto; Motel 6 at 7115 McCracken Road in Westley; and the subject Travelodge at 201 W. Glenwood Ave. in Turlock. Wyndham and KPK knew about this and knew at the time and before

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

these law enforcement operations that sex trafficking was an ongoing problem at their subject Travelodge hotel.  However, they made a choice to take actions to facilitate it and to guard traffickers against law enforcement involvement by warning traffickers.

168.    Wyndham provides their branded locations brand name recognition, a marketing campaign, and hotel listings in its own Global Distribution System and other online agency databases. They also provide access to and management of bookings through their brand-wide central reservation systems, 800 numbers, revenue management tools, brand loyalty programs, internal risk analyses, internal incident reporting processes, trainings and manuals, and company websites. Therefore, bookings, room reservations, and incidents that create liability risk, are primarily controlled by Wyndham.[52]

169.    Wyndham represents to the public that Travelodge by Wyndham properties have consistently being growing.  It's clear that Wyndam is concerned with profit and not people or people's safety. Upon information and belief, at all times of trafficking alleged herein and currently, KPK paid and pays Wyndham a significant percent of their total revenue per room rental and is required to develop, operate and maintain the property in accordance with the parent Wyndham's brand standards as they are laid out in the franchise agreement and other agreements, handbooks, rules, and policies.

170.    Based upon information and belief, the Wyndham Hotel & Resorts, Inc. franchised the subject Travelodge to KPK before Plaintiff was trafficked there knowing that the property was already a cesspool for crime and criminal activity, including prostitution and sex trafficking. At all relevant times, Wyndham Hotel & Resorts, Inc. conducts detailed inspections of property and areas before entering into franchise

---

[52] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (Apr. 10, 2018), The Origins and Growth of Franchising in the Hotel Industry (lodgingmagazine.com).

COMPLAINT FOR DAMAGES AND INJURIES                    SINGLETON SCHREIBER
                                                      591 CAMINO DE LA REINA, STE. 1025
                                                      SAN DIEGO, CA 92108
                                                      (619) 771-3473

agreements and did the same here. At all relevant times, the subject high-crime area and property known for sex trafficking at and near the subject Travelodge would have been readily apparent upon reasonable inspection.

171. Upon information and belief, Wyndham Hotel & Resorts, Inc. conducts research and chooses what locations to enter into franchise agreements with and knew before agreeing to franchise and operate the subject Travelodge that it was in a location and on property that was known for sex trafficking, sex crimes and other criminal activity that had resulted in several arrests.

172. Wyndham Hotel & Resorts, Inc. holds itself out to the public as the operator of the Travelodge's that it franchises, including the subject Travelodge, and has made public statements about it being the operator of its franchised properties. It advertises each property and provides details and misrepresentations about safety to the public in attempt to entice the public to rent rooms at the properties.

173. Based upon information and belief, at all relevant times, KPK, INC. and WYNDHAM HOTEL & RESORTS, INC. had written and verbal agreements that gave Wyndham control over the subject Travelodge and KPK as it relates to booking and payment policies, safety and reports related to safety concerns, crime at the property, Do Not Rent lists, and to inspect the property and to make any changes necessary, including with policies and procedures, for the safety of guests at the property.

174. Wyndham subjected KPK, INC. defendants to detailed standards and requirements regarding the operation of the Travelodge through the franchising agreements, detailed written policies and manuals and through other formal and informal protocols, directives, inspections, mandates, reporting, and expectations imposed by Wyndham.

175. Upon information and belief, Wyndham requires their branded properties, including the subject property, to use a property management system and transaction

COMPLAINT FOR DAMAGES AND INJURIES
SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

system. This system is linked to the Wyndham' corporate network and data center. This is to, among other things, receive reservations, all related data, safety reports, and process payment transactions. Wyndham had and has the data for each of its franchisees, including the KPK, INC and the subject Travelodge. Wyndham received the incident reports, including and especially related to police activity, calls for service, warrants, and surveillance footage pulled for law enforcement at the subject Travelodge.

176. Upon information and belief, per the relevant franchise agreements, Wyndham may enforce their brand standards through periodic and regular inspections of the hotel locations, backed up with the ultimate threat of termination of the agreement.[53] Wyndham keeps regional managers and other employees responsible for overseeing their franchised properties and are well aware of what is going on at each franchised property, and were aware at all relevant times alleged herein. Reporting procedures mandate that KPK, INC. would have had to and did report safety issues and crime at the hotel to Wyndham area managers and Wyndham's corporate offices that were in charge of managing and overseeing the Travelodge.

177. Wyndam claims in a recent public report that it "continues to work to enhance policies and mandate training for all team members to help them identify and report suspected trafficking activities." Thus, it knows sex trafficking is a problem at its properties and its other public statements shows it knows it has been for years.

**The Khatris and KPK, INC. Defendant Acted as Actual Agents of Wyndham.**

178. Wyndham is vicariously liable for the acts, omissions, and knowledge of the KPK, INC. and their staff, which are Wyndham' actual agents or subagents, including their employees.

---

[53] Many of the franchise disclosure documents, which outline the policies and procedures of franchise agreements can be accessed publicly on https://fddexchange.com/view-fdd-docs.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

179. Wyndham subjected the KPK, INC. and the owners to detailed standards and requirements regarding the operation of the Travelodge location named and described herein through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, inspections, rules, reporting, and expectations imposed by Wyndham.

180. Upon information and belief, at all times relevant herein, Wyndham and KPK, INC., and each of them, were the apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible staff, staff, apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of each other and were acting as such within the course, scope and authority of said agency and employment, and that each of these Defendants, when acting as a principal or agent, was negligent, including but not limited to, in the hiring, training, retention, and supervision of each other as an agent, servant, employee, assistant, and consultant.

181. Upon information and belief, every act or omission of Wyndham and KPK, INC. and their apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible servants, servants, apparent ostensible staff, staff, apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of their co-defendants, whether or not within the scope of their agency, was ratified by the other. Wyndham knew what KPK, INC. was doing to facilitate trafficking, including allowing cash payments, allowing false identities, giving rooms to traffickers in the back, not reporting violence and the red flags of trafficking to law enforcement, telling staff and security to look the other way, and choosing not to enforce any parking policies regarding non-guests.

182. Wyndham obscures the full extent of control they exercise over their Travelodge Franchisee locations and other locations by treating the contracts, manuals and certain policies as confidential and proprietary and prohibiting any public

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

disclosure of the policies and manuals in particular. They keep their contracts vague while reserving their right to exert control, inspect properties and mandate standards—which they do—as well as have the right to end contracts at their discretion.

183. Upon information and belief, the standards that Wyndham imposed on the KPK, INC.:

      e. Did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools KPK, INC. used at their property;

      f. Covered virtually all aspects of hotel operations, including internal operating functions;

      g. Dictated the specific manner in which KPK, INC. Defendants and hotel staff had to carry out most day-to-day functions at their subject Travelodge, including but not limited to those regarding check in policies, crime policies, cash policies, time of payment and parking policies; and

      h. Significantly exceeded what was necessary for Wyndham to protect its registered trademarks.

184. Wyndham was in an agency relationship with the KPK, INC. Defendants at all relevant times. Upon information and belief, this agency relationship was created through Wyndham's exercise of an ongoing and systemic right of control over KPK, INC., including the means and methods of how KPK, INC. conducted daily business through several of the following:

      a. Sharing profits;

      b. Requiring KPK, INC. to use Wyndham's customer rewards programs and customer benefit programs;

      SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

c. Hosting online bookings on WYNDHAM's and its Travelodge developed, owned, and operated domains;

d. Regulating rates and internet access for guests;

e. Setting employee wages;

f. Approving staffing levels and numbers of employees;

g. Making decisions about employment and budgets, including for security and management;

h. Setting and/or approving room rental rates;

i. Approving additional cameras and/or security systems;

j. Advertising for management and local positions;

k. Standardized training and methods for KPK, INC. staff;

l. Standardized and strict rules of operation;

m. Oversight in hiring and/or terminating staff and managers;

n. Building and maintaining Travelodge properties;

o. Reporting and oversight requirements to and from WYNDHAM corporate and to its area managers;

p. Fixing prices; and

q. Creating advertising campaigns and unrealistic expectations of safety for guests.

185. Wyndham held themselves out and represented to the public as possessing authority to act on the subject Travelodge's behalf. Wyndham held themselves out and represented to the public that they owned and controlled the subject Travelodge.

186. In addition to the ways described above, upon information and belief, at all relevant times, Wyndham exercised and reserved the right to exercise systemic and pervasive control over KPK, INC.'s day-to-day operation of the subject Travelodge, including the following ways:

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

a. Wyndham required the KPK, INC. and their management to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for Wyndham to protect their registered trademarks;

b. Wyndham provided training for hotel management and select hotel staff on-site;

c. Wyndham required all hotel staff to participate in training it created through an online learning platform it controlled and maintained;

d. Wyndham controlled training provided by the KPK, INC. to motel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used and which employees would receive it;

e. Wyndham controlled reporting procedures from KPK, INC. to itself;

f. Wyndham retained sole discretion to determine whether all training had been completed satisfactorily and reserved control over training audits and to take adverse actions against its contract with KPK, INC. if trainings were not being given and completed as Wyndham required;

g. For certain products and services that KPK, INC. and its owners, management and staff were required to purchase to operate the subject Travelodge, Wyndham designated approved vendors and prohibited the location from purchasing goods and services from anyone other than an approved vendor;

h. Wyndham required its franchisees, including the owners of the subject Travelodge to sign a technology agreement governing the terms under which they must procure and use technical services and software while

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

operating the motels. Defendants were required to install, and use certain brands, types, makes, and/or models of hardware, software, peripheral equipment, and support services to perform internal operating functions at the motel;

i. Based upon information and belief, Wyndham had access to the surveillance videos for the subject Travelodge;

j. Wyndham set required staffing levels for the Travelodge;

k. Wyndham established detailed job descriptions for all positions at the Travelodge and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so;

l. Wyndham set requirements for the hiring process used by the owners and managers at the Travelodge and oversaw employee discipline processes and termination decisions;

m. Wyndham provided benefits for staff that worked directly at the Travelodge and those that managed and controlled it;

n. Wyndham required KPK, INC. and its Travelodge to use a customer resource management program maintained and operated by Wyndham;

o. Wyndham controlled channels for guests to report complaints or provide feedback regarding the subject Travelodge and directly participated in the response and/or supervised the response to customer complaints or other feedback. Wyndham retained the right to provide refunds or other compensation to guests and to require its direct owners and/or franchisees, including KPK, INC. to pay associated costs;

p. Wyndham generated reports and analysis of guest complaints and online reviews for the subject Travelodge;

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

q. Wyndham required the Travelodge owners and operators to use a Guest Relations Application owned, operated, and maintained by Wyndham to manage all guest data and information. Wyndham could and did use the backend of this system to analyze data and generate reports;

r. Wyndham set detailed requirements for insurance that KPK, INC. must purchase and retain the right to purchase insurance for KPK, INC. and to bill them directly for that insurance if Wyndham determine that they have not purchased adequate insurance;

s. Wyndham regularly audited the books, records, and communications with law enforcement of KPK, INC. for the subject Travelodge;

t. Wyndham conducted frequent and regular inspections of the subject Travelodge, including overnight stays;

u. Wyndham retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of any agreements if the KPK, INC. Defendants, or any of its franchisees, violated any of the Wyndham' detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the KPK, INC. and the subject Travelodge;

v. Wyndham controlled all marketing for the subject Travelodge and prohibited them from maintaining any online presence unless specifically reviewed and approved by Wyndham;

w. Wyndham imposed detailed recordkeeping and reporting requirements on KPK, INC. Defendants and/or its Travelodge regarding virtually all aspects of hotel operations;

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

x. Wyndham supervised and controlled day-to-day operations of the subject Travelodge through detailed information and extensive reports that it obtained through the property management system and other software systems it required the KPK, INC. Defendants to use; and

y. Wyndham retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations.

187. At all relevant times of Plaintiff's trafficking, while being trafficked at the Travelodge, Wyndham exercised control over the way KPK, INC. ran the subject Travelodge; and KPK, INC. was an agent of Wyndham.

**Wyndham and KPK, Inc. Defendants Know and Have Known About Sex Trafficking at Travelodge Properties and the Subject Travelodge for Decades, Including of Plaintiff at the Subject Travelodge for Years.**

188. Over at least the past two decades, law enforcement has been consistently serving warrants to Wyndham and its franchisees, whom then send it to Wyndham, related to sex trafficking investigations and sex trafficking occurring at Travelodge and other Wyndham owned and branded properties.

189. Based upon information and belief, Wyndham Hotel & Resorts, Inc. was made aware of the police activity, response to sex crimes including sex trafficking, and police reports from KPK, INC. and its other agents and employees that were at the subject Travelodge.

190. Wyndham also has put out several public statements over the past ten (10) to fifteen (15) years indicating they know that sex trafficking is a problem in the hotel industry and at their hotels and claiming that they will be committed to fight against it.

191. Defendant Wyndham signed "the Code" several years ago before Plaintiff was trafficked and thereby promised to adopt policies to combat trafficking.18 Yet, Defendants have failed to implement most, if not all of these policies. Defendant

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

Wyndham is a face and signor of the ECPAT anti-trafficking knowledge, guidance, and information necessary to prevent human trafficking, and Wyndham publicly committed to participate in the programs shown to assist in identifying and preventing sex trafficking inside its brand hotels. Therefore, Wyndham should not only have created effective mandatory Brand standards to be mandated at its branded properties, but it should also have enforced them. Despite Wyndham's direct and vicarious knowledge of trafficking at its hotels, it did not create, implement or enforce effective standards to prevent the trafficking it knew its properties were facilitating, including at the subject Travelodge.

192. Based upon information and belief, several federal lawsuits have been filed against Wyndham Hotel & Resorts, Inc. and hundreds of sex trafficking

victims have come forward against Wyndham Hotel & Resorts, Inc. describing similar stories about how they were blatantly and openly trafficked for sex and abused and harbored at Wyndham properties over the past two to three decades.

193. From at least 2010 to 2019, Wyndham Hotel & Resorts, Inc. and KPK, INC. had access to and did review, intercept, and read online reviews for its properties that it owns and/or operates as franchisors, including the subject Travelodge by Wyndham. Reviews from most of the Travelodge by Wyndham locations that Wyndham Hotel & Resorts, Inc. has a franchise and ownership interest in put the Wyndham Hotel & Resorts, Inc. on direct notice that prostitution and sex trafficking has been occurring at most of its locations for over a decade.

194. Wyndham has published reports indicating that it controls and implements anti-trafficking policies at its branded hotels and its website directs consumers to information regarding the same.

195. Despite reports, police activity and investigation of trafficking at the subject Travelodge by Wyndham, and direct knowledge of trafficking at the subject

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

Travelodge by Wyndham, Wyndham chose not to change its ways or policies and procedures no matter how many people it hurt over the years because it was profiting from those policies that promote trafficking.

196. Wyndam claims in a recent public report that it "continues to work to enhance policies and mandate training for all team members to help them identify and report suspected trafficking activities." Thus, it knows sex trafficking is a problem at its properties, and its other public statements shows it knows and has known it has been for years.

197. Based upon information and belief, Wyndham Hotel & Resorts, Inc. obtained all reviews for the branded properties it operated, including the subject Travelodge by Wyndham and analyzed the reviews as part of data reports. Wyndham retained control over the subject Travelodge by Wyndham's response to reviews and reports of criminal activity, including sex trafficking.

198. Ultimately, at least several hundred traffickers involved with at least hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of Wyndham branded properties owned and/or controlled by Wyndham.

199. At all times relevant and before Plaintiff's trafficking, KPK, INC. and Wyndham Hotel & Resorts, Inc. were and are well aware of the sex trafficking signs and red flags, as well as the fact that it has occurred at hotels and motels for decades and have chosen to allow it to happen and to facilitate it at their properties, including the subject Travelodge by Wyndham from 2015 to 2017, as well as before and after, despite that knowledge.

200. The subject hotel that became a Travelodge by Wyndham in or before the early 2000s has been a known hotspot and cesspool for sex crimes and other heinous crimes since long before Plaintiff was trafficked there.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

201. In 2011, a Change.org petition was published to address rampant gang-based sex trafficking in Wyndham hotels in California. The petition argued that from 2006 to 2011, members of the Crips gang in San Diego ran child sex trafficking rings of at least sixteen (16) girls out of various area hotels. Two subject properties on which many instances of child sex trafficking took place were a Howard Johnson in Escondido, California, and a Travelodge in San Diego, California, both owned and/or controlled by the Wyndham group.

202. KPK, INC. owners and employees saw and heard sex trafficking occurring at the subject Travelodge by Wyndham from at least 2015 through 2017, including the trafficking of Plaintiff there. KPK, INC. communicated with Plaintiff's traffickers and Wyndham Hotel & Resorts, Inc. about the trafficking of victims, including Plaintiff. Upon information and belief, they sometimes referred to the victims as "prostitutes." "hoes" or "sex workers" and the traffickers as "pimps." KPK, INC. and their employees knew the traffickers and knew that the traffickers controlled Plaintiff, and it was clear that Plaintiff's traffickers were watching Plaintiff at all times and forcing her to engage in commercial sex. KPK, INC. and its owners and managers understood that Plaintiff was being forced to engage in commercial sex and that the money went directly to her traffickers for room rentals at the Travelodge by Wyndham and to the traffickers for profits, including KPK, INC.'s and Wyndham Hotel & Resorts, Inc.'s profits.

203. Wyndham Hotel & Resorts, Inc. inspected the property regularly from 2015 through 2017, and before and after, and saw the red flags of Plaintiff's and other victims' trafficking and knew or should have known that it was profiting and benefiting from the room rentals that directly resulted from the trafficking of Plaintiff and other sex trafficking victims at the subject Travelodge by Wyndham.

204. Upon information and belief, before and at the time Plaintiff was trafficked at the subject Travelodge by Wyndham, KPK, INC. and Wyndham Hotel & Resorts, Inc.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

saw victims, including but not limited to Plaintiff, being held captive, controlled, drugged, abused, hit and trafficked for sex there. KPK, INC., Wyndham Hotel & Resorts, Inc., and/or their employees while working in the course and scope of their employment with each, directly witnessed all signs of sex trafficking, including the signs of the trafficking of Plaintiff described above.

205. The police responded to 911 calls from the public at the subject Travelodge by Wyndham property regularly and approximately more than one thousand and three hundred (1,300) times from 2013 through 2017 for criminal activity, including crimes related to sex trafficking, prostitution, rape, domestic violence, sexual offenses, assault and battery, deaths, criminals with warrants, fights and serious bodily injuries requiring emergent medical attention.

206. Travelodge by Wyndham Owners and Wyndham Hotel & Resorts, Inc. were made aware of those crimes and sex crime incidents in which law enforcement responded at the property during the subject times that Plaintiff was regularly trafficked there for sex, by and through law enforcement and members of the public, and did not do anything to try to prevent the sex crimes or stop those it was facilitating, including sex trafficking, from continuing to occur at the property from 2015 through 2017, as well as before and after.

207. Since at least the early 2000s, KPK, INC. and Wyndham Hotel & Resorts, Inc. knew employees and staff at its properties, including the subject Travelodge by Wyndham, were participating in and facilitating sex trafficking and that it was generating revenue through policies that encouraged sex traffickers to operate at their properties, including but not limited to not implementing policies and procedures known to be necessary to stop known trafficking; not requiring identification cards or "IDs;" not requiring parking passes; not having gated parking lots; allowing daily payments of cash for extended stays; complying with requests for specific rooms;

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

allowing traffickers to escort bruised and battered women to rooms without IDs; allowing several buyers to come in and out of the rooms without IDs where victims were trafficked; allowing guests to use illicit drugs on property; allowing violence to occur at the property; allowing guests to carry weapons on the property; ignoring yelling and screaming from rooms where trafficking took place; ignoring obvious copious amounts of sex paraphernalia; not addressing the trafficking signs and reports of drugs, abuse and prostitution; forming relationships with traffickers and treating traffickers like "regulars" with benefits by accommodating specific requests that entail known signs of trafficking and not reporting the trafficking to any authorities or law enforcement or taking any steps to prevent or stop it from occurring at their property.

208.   Reviews for the subject Travelodge by Wyndham left on public online sites that were routed directly to Wyndham Hotel & Resorts, Inc. and KPK, INC. show that guests reported "Do not stay here under any circumstances!! . . . drug dealings, and prostitution are rampant and constant [sic] . . .;" "Sketchy people hanging around;" "tons os women just standing about in a manner that would raise some concern. Felt extremely unsafe;" "There was also a couple physically fighting and nothing was done about it;" "people out in parking lot drinking, fighting, cursing, and making noise all night. . . We barely slept at all . . .There were also two different sets of drug dealers sitting in their cars in the parking lot for hours, waiting for customers;" "To top it off I've never felt so scared for my safety walking around a hotel, the people checking in and walking around the establishment plain out looked like drug dealers/users, literally felt like I could get mugged at any second;" "Drug deals going on everywhere!;" "clear drug activity was present;" doors and locks were broken and busted; the walls had holes; "Prostitution is obvious . . . sheriffs were on a hunt for a pedophile . . .and if you complain as I did you get put on a DO NOT RENT list;" "drug deals were going on in the parking lot and rooms as well as prostitution . . . Corporate

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

took down my concerns and said I should hear from the gen mgr of the hotel within 5 days;" "They should be careful to only rent first floor rooms to hookers, so other people aren't kept awake all night by overhead traffic;" "They did not mention the drug users or hookers which were long term guests of the hotel;" there "was a lady doing drugs with the door open and people coming and going from one room!!;" and an employee complained to a guest about the Travelodge manager being drunk.

209. Defendant Wyndham and KPK, INC.'s employees and agents charged Plaintiff's traffickers more for the rooms at the subject Travelodge because the employees and agents knew they were using the room to traffic Plaintiff for sex. The same employees saw them repeatedly return to the Travelodge and made comments about the commercial sex and knew Plaintiff's trafficker and his associates were controlling, abusing and forcing Plaintiff.

210. KPK, INC. and Wyndham Hotel & Resorts, Inc. had and have direct access to, read and responded to reviews left by guests on websites wherein guests frequently complain about the prevalence of sketchy people, prostitution, hookers, drugs and drug use and dealing, screaming, fights, unhealthy conditions, unsafe conditions, blood in rooms and on property, broken doors and locks, criminals at the property, and other signs of trafficking at the subject Travelodge by Wyndham. KPK, INC. and Wyndham Hotel & Resorts, Inc. read online reviews, so they saw the reviews that put them on notice or should have put them on notice of sex trafficking occurring at the subject Travelodge by Wyndham, including from 2015 through 2017 when Plaintiff was being trafficking there, and including reports consistent with the venture that trafficked Plaintiff in particular.

211. KPK, INC. and Wyndham Hotel & Resorts, Inc. provided the means necessary for traffickers to traffic victims, including Plaintiff.

212. At all relevant times, KPK, INC. and Wyndham arranged with traffickers

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

to have victims housed in specific areas and rooms to make it easier for traffickers to conduct their business, and accommodated traffickers with whatever rooms they requested.

213. At all relevant times, KPK, INC. and Wyndham allowed traffickers to use other people's identification and/or did not require any form of identification, knowing illegal activity that would occur, and understanding that sometimes payment would not be made until after the forced commercial sex acts.

214. KPK, INC. and Wyndham often charged higher room rates to traffickers in exchange for permitting trafficking activities to be conducted at the subject Travelodge by Wyndham and accommodating late, cash payments.

215. KPK, INC.'s employees and agents seemingly had arrangements with her trafficker and his associates; the traffickers would give them extra cash, and they would give the traffickers the rooms they wanted in the locations they wanted, would not interfere when Plaintiff was being abused and sold for sex, and would place other guests that reported or complained about the criminal activities on a Do Not Rent list.

216. Wyndham knew or should have known about its agents' and KPK, INC.'s employees' and agents' participation and engagement in trafficking activities at the subject Travelodge by Wyndham because it was readily apparent upon any reasonable inspection from 2015 through 2017 and Wyndham had employees inspect the premises regularly during that time period. Based upon information and belief, Wyndham inspected the property while Plaintiff was being trafficked there from 2015 through 2017.

217. The subject Travelodge by Wyndham had malnourished, underage and adult women under the control of traffickers who openly conducted their trafficking business in front of Travelodge by Wyndham employees and/or management, and the traffickers rented numerous hotel rooms for the buyers to come and go night after night.

69

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

218. Wyndham Hotel & Resorts, Inc. and KPK, INC. would have easily seen this regular, open activity upon any reasonable inspection of the property and did see it. This is true for numerous Travelodge by Wyndham properties controlled by Wyndham.

219. The subject Travelodge by Wyndham has had other sex trafficking survivors speak out against it related to its owners, operators and franchisors allowing and participating in open and blatant sex trafficking that took place at the subject Travelodge by Wyndham during the same years alleged herein, as well as before and after.

220. During the period Plaintiff was trafficked at the subject Travelodge by Wyndham, obvious signs existed and were visible to anyone paying attention that her traffickers were engaged in sex trafficking, including all red flags of her trafficking alleged above.

221. Other women and girls were trafficked by other traffickers at the same Travelodge by Wyndham at the same time as Plaintiff and KPK, INC. and Wyndham Hotel & Resorts, Inc. saw and heard the signs and should have saw and heard the signs of other sex trafficking too.

222. Upon information and belief, KPK, INC.'s owners and managing agents were also the owners and managing agents of two other hotels frequented by Plaintiff's traffickers and other traffickers from 2015 through 2017 and before. Upon information and belief, KPK, INC.'s owners and managers saw Plaintiff being trafficked at multiple of its properties and knew Plaintiff's traffickers as regular "guests" at the properties.

223. Defendant Wyndham Hotel & Resorts, Inc.'s and KPK, INC.'s agents and employees were physically at the subject Travelodge by Wyndham often from 2015 through 2017 while Plaintiff was being trafficked there. Based upon information and belief, the subject defendants' employees and agents were aware of all operations and

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

criminal activity because they had employees that were engaged in such activity and regular guests that lived at the property for long periods of time that were also engaged in the criminal activities daily and nightly. Wyndham and KPK, INC., by and through their employees and agents, inspected the property, conducted audits and were running major and day-to-day operations of the subject Travelodge by Wyndham such that they knew about the sex trafficking firsthand and by and through their employees and agents.

224.    At all relevant times, Plaintiff's traffickers would get the rooms; did not appear to have to show any form of ID to the Travelodge by Wyndham, KPK, INC. or their employees; were allowed to pay in cash nightly and would linger around the hotel or in the parking lot throughout the nights while Plaintiff was forced to have sex with non-guest buyers at the subject Travelodge by Wyndham multiple times per day and night for days and weeks at a time. This was all in plain sight of KPK, INC. employees and agents daily and nightly, Wyndham Hotel & Resorts, Inc., during inspections, and to both by and through their employees and agents. They were also made aware of trafficking, and the sex trafficking of Plaintiff in particular, through online reviews, guest reports to corporate, employee reporting procedures, and their own data that was logged in their systems.

225.    At the subject Travelodge by Wyndham, Plaintiff's traffickers could be seen leaving the room when another male arrived and then returning as soon as that male left. Money exchanges were visible to employees and persons at the Travelodge by Wyndham. This would happen multiple times a day/night, every day that Plaintiff was trafficked there for days and weeks at a time, regularly from 2015 through 2017. Employees and traffickers worked together to encourage buyers to participate and to make it easy for traffickers to conduct business on the property for profits. KPK, INC. and Wyndham Hotel & Resorts, Inc. made an active choice not to call the police or notify

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

law enforcement about the trafficking that they knew and should have known was going on at the subject Travelodge by Wyndham for years, including the trafficking of Plaintiff, so that they would continue to profit from the sex trafficking ventures.

226. Heavy foot traffic took place in and out of the rooms where Plaintiff and other victims were being harbored at the subject Travelodge by Wyndham. This foot traffic involved men who were not hotel guests and did not show identification to the hotel or require parking passes to park. Several men came in and out of the subject hotel rooms and on and off the property in a single day. These individuals entered the room Plaintiff was in and left at unusual hours and were present at the hotel or in the room for brief periods of time. Their comings and goings were visible to employees at the front desk and around the property.

227. At relevant times, some employees and guests appeared to live at the Travelodge by Wyndham and were always around. A reasonable hotel/motel company would have seen these regular "red flag" interactions at their property described above and Defendants should have seen it themselves while at the property, as well as by and through their employees and agents who were at the property and also observed all of the signs of Plaintiff's trafficking.

228. Travelodge by Wyndham's owners and management, and Wyndham Hotel & Resorts, Inc. allowed, facilitated, and participated in the trafficking of persons at the subject Travelodge, including Plaintiff.

229. Plaintiff would have been seen by Defendants' employees as she was forced to come and go from the hotel rooms battered, bruised, tired, drugged, and unhealthy. Other victims that Plaintiff saw being taken to and from and controlled at the subject Travelodge would have been seen by Defendants too.

230. There were obvious signs of Plaintiff's trafficking visible to KPK, INC. and Wyndham Hotel & Resorts, Inc. that were consistent with trafficking, which included

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

well known "red flags" for trafficking in a hotel, such as the men going in and out, exchanges of money, abuse, control, condoms, sex paraphernalia, lingerie, loitering, drug use and selling, and solicitation. These things were not only visible to but must have been seen by hotel employees surveilling, staying at the motel, inspecting the motel, watching camera footage, at the front desk, and entering and cleaning the rooms or even just collecting the trash and cleaning the rooms.

231. When forced and coerced into coming and going from the subject motel locations, Plaintiff looked unhealthy, unhappy, abused, scared and defeated. Her traffickers were always watching her, and her noticeable victim demeanor was visible to hotel employees that she passed by regularly at the subject Travelodge by Wyndham, as well as the other two properties owned by the Khatris, for years.

232. Upon information and belief, multiple employees of each Defendant, including KPK, INC. and Wyndham Hotel & Resorts, Inc., and including management-level employees, observed, or were made aware of the obvious signs Plaintiff's trafficking while acting within the course and scope of their employment with each applicable defendant.

233. Based upon information and belief, KPK, INC. and Wyndham Hotel & Resorts, Inc. read all online reviews about the subject Travelodge by Wyndham property while each owned, had an ownership interest in, operated and/or controlled it. Numerous reviews were left online about the subject Travelodge by Wyndham that directly put defendants on notice of red flags of sex trafficking at the property, including from 2015 through 2017.

234. As such, KPK, INC. and Wyndham Hotel & Resorts, Inc. knew and should have known that Plaintiff and others were being trafficked for sex at the subject Travelodge by Wyndham regularly from 2015 to 2017, as well as others before and after.

235. At all times relevant, from 2015 through 2017, KPK, INC. and Wyndham

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

Hotel & Resorts, Inc. knowingly profited and directly benefited from the room rentals and other goods and things purchased as a direct result of their participation in the sex trafficking venture with Plaintiff's traffickers related to her trafficking and the trafficking of others for sex.

**Wyndham Knowingly Benefited from Participation in a Venture with the KPK, INC. Defendants and Plaintiff's Traffickers.**

236. On information and belief, Wyndham owns some of their hotel locations directly and franchises others. For the ones like the subject Travelodge in which Wyndham decided to franchise, Wyndham lends its name and likeness to third party owners, including KPK, INC., while the building and operations are under the brands' supervision and control. This is done through brand standards, franchise agreements, written policies and maintaining control over operations and having a reservation of rights to terminate the contract for any reason. This allows the parent brand to exchange the high risk that is inherent in owning an asset like a motel for the low risk associated with owning a property contract or franchise contract and still profit and maintain control. Because of this, KPK, INC. and Wyndham are inextricably intertwined. Their goals are the same; Wyndham tells KPK, INC. how to run the business, gives benefits and funding for certain aspects of the business, and both profit from each room rental. Here, the Travelodge at issue and KPK, INC. and those that owned and controlled it are inextricably intertwined with Wyndham. They operate together and without one another, neither would not be operating the subject Travelodge.

237. The average customer does not see the franchisor/franchisee relationship between Wyndham and its franchisees. The parent brand gives the franchisee or individual property its identity. The parent brand provides the signage that assures customers that if they check into that hotel they can expect the standards consistent with Wyndham. Customers get emails and mail from Wyndham thereafter and become

members of the Wyndham's programs and memberships. The Travelodge in this case was advertised as Travelodge by Wyndham, not a motel owned by anyone other than Wyndham. The Wyndham company holds itself out to the public as the owner and controller of the properties, including the subject Travelodge by Wyndham. Brand requirements and rules are contractual with the power to control weighed heavily toward Wyndham. The Brand, here Wyndham, retain control over its properties.

238. At all times of trafficking alleged herein and currently, booking and room reservations are controlled by the corporate parent brands, and for the Travelodge, that was Wyndham.

239. Upon information and belief, at all times of trafficking alleged herein and currently, the franchised Travelodge paid a percentage of their total revenue from room rentals back to Wyndham and was and is required to develop and maintain the property in accordance with Wyndham's standards as they are laid out in the franchise agreements and other policies, procedures, trainings and rules set by Wyndham. Wyndham retains control over and the right of entry and inspection, response to crime, response to trafficking, response to online reviews, global calling platforms for reporting safety concerns at their properties, and trainings related to the same. This was true for the subject Travelodge.

240. Upon information and belief, per the agreements, Wyndham could at all relevant times enforce standards through periodic and regular inspections, analyzing data and footage, reviewing reports, analyzing reviews and complaints by members of the public, reviewing interactions with law enforcement and warrants, and even termination of the franchise agreement if the franchise hotel is found to be inadequate, unsafe, or operating in violation of any laws. The rights of Wyndham, and the responsibility of Wyndham, is to enforce their brand standards and day-to-day operation standards, including safety standards.

241. Here, Wyndham had employees in charge of inspecting and that did inspect the property and Travelodge at relevant times. On information and belief, Wyndham directly inspected the property when plaintiff was being trafficked there and did see all of the red flags of Plaintiff being trafficked and who knew or should have known that she, as well as several others, were indeed being trafficked for sex for long periods of time and regularly at their Travelodge locations identified herein.

242. At all times of trafficking alleged herein, Wyndham dictated franchisee policies related to safety, security, human trafficking, employee training and franchisee's responses to the same, including at the subject Travelodge. Wyndham dictated every aspect of day-to-day operations and are directly responsible for their employees', managers', supervisors', regional managers', officers', directors' and agents' conduct in knowingly facilitating, aiding, abetting, and allowing trafficking to occur at the subject Travelodge for profit.

243. Upon information and belief, at all times of trafficking alleged herein, reservation information for rooms at the subject Travelodge passed through a system operated and managed by Wyndham. Wyndham had the guest information, guest complaints, and could see data and patterns related to issues with each guest and sets of guests.

244. Defendants profited from the sex trafficking of Jane Doe when they rented rooms to Jane Doe and/or her trafficker, when they knew or should have known that human trafficking was occurring and that Plaintiff was being trafficked for sex due to several red flags being apparent and visible for weeks and months over the subject years and before.

245. Defendants benefited from the steady stream of income that Jane Doe's trafficker, and many other traffickers, brought to their hotels. Defendants profited from each and every room that Jane Doe's trafficker rented where Jane Doe was harbored

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

and maintained for the purpose of sex trafficking.

246. Defendants facilitated the trafficking through its practices, policies, and procedures, as well as choices to allow exceptions to policies and procedures for traffickers. They failed to take appropriate action to prevent the trafficking of individuals, including Jane Doe, for sex so they could continue to profit from the room rentals, and business that trafficking brings. More than failing to prevent, Defendants accommodated Plaintiff's trafficker's requests, gave traffickers rooms in the back, allowed cash payments for extended periods, allowed men to parade in and out despite not being guests, allowed money exchanges for the commercial sex to take place in front of them, and watched and heard physical abuse and rape occurring daily while Plaintiff was trafficked at each property for long periods of time regularly. When other guests complained, the Khatris, KPK, INC. and Wyndham's employees and agents would not call the police in response to the loud and egregious physical abuse and red flags of trafficking—instead, they would tell the trafficker they had to be quiet, so as to appease guests and continue to profit from the room rentals involved in the trafficking venture.

247. Wyndham and KPK, INC. Defendants owned and operated the subject Travelodge together while buyers paraded in and out of rooms rented for the purpose of trafficking Jane Doe. Their staff and agents observed and should have observed the buyers parading in and out of its hotel rooms to engage in the sex trafficking of Jane Doe, money exchanges taking place in plain sight, the sounds of abuse, the paraphernalia related to the commercial sex that cleaning staff and managers witnessed during the stays and at check out each time, over and over again. Their staff and agents observed or should have observed the trafficking occurring regularly and for multiple days at a time at the subject hotel, but they allowed it—and several other forms of criminal activity in violation of their own policies— so they could profit.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

248. Jane Doe's trafficking at the subject Travelodge location was a result of Wyndham's and KPK, INC.'s participation in a venture with each other as well as Jane Doe's other criminal traffickers. If Wyndham and KPK, INC. had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe's trafficking at the subject Travelodge and Plaintiff Jane Doe would not have suffered the harm that she did there.

249. Despite its actual or constructive knowledge that the venture it was engaged in was in violation of 18 U.S.C. §§1591(a) and 1595(a) through the conduct of hotel staff and the widespread trafficking at the subject Travelodge, as well as all of the red flags known to them, Wyndham participated in the venture by continuing to associate with the hotel staff and KPK, INC., and continuing to ratify their conduct and the wrongful conduct of its employees and agents in the negligent participation in the trafficking ventures at the Travelodge in a way that it knew or should have known would lead to further violations of 18 U.S.C. § 1591(a) including trafficking of victims like Jane Doe, and specifically the continued trafficking of her.

250. Wyndham and KPK, INC. Defendants financially benefited from renting rooms to Jane Doe and Jane Doe's trafficker on numerous occasions since they benefited from the regular cash payments, and even increased payment amounts for rooms in which Plaintiff was forced to engage in commercial sex at the Travelodge regularly for years.

251. Based upon information and belief, KPK, INC. had a contractual responsibility and agreement with Wyndham to notify Wyndham of all safety issues and crime that occurred at the subject Travelodge property, including but not limited to sex trafficking. KPK, INC. was aware of Plaintiff being trafficked at the subject Travelodge and based upon information and belief, KPK reported the red flags, notice

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

and knowledge of Plaintiff's trafficking to Wyndham.

252. Wyndham had area managers and employees that were responsible for overseeing the subject Travelodge while Plaintiff was being trafficked there and who, based upon information and belief, did see and hear the red flags of Plaintiff being trafficked and despite that, took overt acts to continue to accommodate Plaintiff's traffickers, including allowing violations of its policies and choosing not to implement any deterring policies or additional trainings.

253. Wyndham knew or should have known about the venture that was trafficking Plaintiff at its property and that KPK, INC. employees, and its agents, knew and were assisting. Instead of taking remedial actions, Wyndham chose to ratify KPK, INC.'s and its employees' conduct by choosing not to exercise its power to require policy changes, require additional trainings or to terminate its contract with KPK, INC. Instead, it took the information regarding Plaintiff's trafficking, as well as several other trafficking ventures clearly operating at the subject Travelodge, and evaluated it from a risk/benefit standpoint and concluded the benefits of the room rentals were greater than any risk to it. Accordingly, Wyndham chose to participate in the venture that it knew or should have known was trafficking Plaintiff by accommodating the traffickers and allowing otherwise prohibited conduct from the traffickers despite its knowledge and notice of the same.

254. Wyndham participated in this venture through the conduct described herein and renting rooms to the traffickers, as they were jointly responsible for relevant aspects of motel operations, including and especially those relevant to preventing sex trafficking at the subject hotel location, and could and upon information and belief, did inspect the property at relevant times while Plaintiff was being trafficked and did see the red flags of her trafficking and/or know that she was being trafficked there at that time.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

255. KPK, INC., with Wyndham's knowledge and/or notice, charged Plaintiff's traffickers more for rooms than their regular rates because they knew the traffickers were renting the rooms to traffic women and girls. KPK and Wyndham profited more from the trafficking venture room rentals than they were otherwise profiting from regular room rentals. This was a regular and known policy. Based upon information and belief, Wyndham knew about this policy and chose to allow and condone it, thereby ratifying KPK, INC.'s behavior. Wyndham had control over all rates at the subject Travelodge and dictated and/or ratified the policy that allowed the trafficking to occur so long as traffickers, including Plaintiff's traffickers, paid more.

**Defendants Khatri, Inc. and Khatri Brothers, L.P. Knowingly Participated in a Venture that They Knew or Should Have Known Involved the Trafficking of Plaintiff Jane Doe for Sex.**

256. At all times relevant, the Khatris, including but not limited to Anil M. Khatri and Jawahalrlal M. Khatri, owned and operated KHATRI, INC. and KHATRI BROTHERS, L.P., in addition to KPK, INC. Defendants KHATRI, INC. owned and controlled the Tiki Lodge Hotel in Modesto California described above; and KHATRI BROTHERS, L.P. owned and controlled the Budgetel Inn & Suites in Modesto, California described above.

257. At all times relevant, KHATRI, INC.'s owners, officers, managers and employees were at the subject Tiki Lodge Hotel and directly witnessed Plaintiff being abused, escorted around by her trafficker, hit, drug, pushed, yelled at, called demeaning names, and being forced to wear revealing clothing.

258. From 2015 through 2017, KHATRI, INC. and KHATRI BROTHERS, L.P., by and through its officers, owners, employees and agents, directly observed non-guest men coming to and from the Tiki Lodge and the Budgetel, and to and from the rooms Plaintiff was kept in, to engage in commercial sex for short periods of time each day

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

and night for several days at a time. The trafficker would arrange for numerous men to come day and night—it was obvious and noticeable to everyone at the properties, including and especially to live-in management and owners, as well as the Khatris. Defendants saw Plaintiff's trafficker standing guard outside of the rooms in which she was repeatedly abused day and night. They saw money being exchanged outside of the room Plaintiff was being kept in. They saw Plaintiff being incapacitated on several occasions from forced drug use and in a state that she would be unable to consent. Defendants saw the trafficking venture continue to come back over and over again.

259. At the Tiki Lodge Hotel, Plaintiff's trafficker often abused her in common areas around the property. On multiple occasions, Plaintiff would try to leave the rooms, and it would result in loud physical fights. Plaintiff's trafficker and his associates would drag Plaintiff back into the rooms in front of employees. This was directly in front of employees on multiple occasions. The employees did nothing to help Plaintiff and continued to accommodate her traffickers' needs.

260. From 2015 through 2017, KHATRI, INC. and KHATRI BROTHERS, L.P. had the same officers and shared employees such that each saw Plaintiff's traffickers taking her and other victims to both the Tiki Lodge Hotel and to the Budgetel and could see, hear, and at all times relevant understood that Plaintiff was being sold for sex at those properties.

261. At both the Tiki Lodge and the Budgetel, while Plaintiff was being trafficked there, employees conversed with Plaintiff's trafficker and his associates often. They would talk to other traffickers at the motels too. The cleaning women were always around. The cleaning women, front desk staff and employees that presented themselves as either managers or owners, were always around when Plaintiff was being abused and witnessed day-to-day abuse and the forced commercial sex at both locations. The employees would purchase drugs and sex from traffickers.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

262. At the Tiki Lodge, employees purchased Plaintiff from her traffickers for sex. Plaintiff was forced to engage in sexual acts with the Khatris and/or their employee they called "Joe"—who was a manager or owner at Tiki Lodge. "Joe" lived at the property.

263. A front desk worker, who may have been named "Vicki," or something similar, would engage in sexual acts with Plaintiff's trafficker in the back of the Tiki Lodge. "Vicki" knew that the trafficker and his associates were forcing Plaintiff and other women and girls to engage in commercial sex at the Tiki Lodge and the Khatris' other motels.

264. The Khatris and the employees of KHATRI, INC. and KHATRI BROTHERS, L.P. ran small and intimate operations wherein a small number of employees were constantly at the motels and saw and heard all of the red flags of trafficking ventures, including the venture that trafficked Plaintiff. They knew Plaintiff was being trafficked by violent men and befriended Plaintiff's traffickers and even directly engaged in the trafficking of Plaintiff, while profiting from her trafficking.

265. KHATRI, INC. and KHATRI BROTHERS, L.P. negligently and recklessly adopted policies that were relaxed for traffickers and met the needs of traffickers while failing to protect guests at the subject motels. They allowed cash payments. They allowed drugs and drug deals at the properties. They did not limit or control the vehicles or non-guests coming and going from the properties. They failed to require employees to call law enforcement or refuse accommodations to known traffickers. In fact, it was their policy to look the other way and allow crime so long as guests paid for the rooms. They allowed physical abuse and assaults at the properties and failed to fully document crimes or to cooperate with law enforcement related to crime.

266. The Khatris, KHATRI, INC., and KHATRI BROTHERS, L.P., had actual knowledge that Plaintiff was being trafficked at their properties and continued to rent

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

rooms to her traffickers for that exact and apparent purpose. The Khatris, KHATRI, INC., and KHATRI BROTHERS, L.P., by and through their officers, managers and employees, directly participated in the sex trafficking of Plaintiff and knowingly benefited from the same.

**Defendants Knowledge of Sex Trafficking at Their Hotel Locations.**

267. Defendants have known, since well before Jane Doe's trafficking, that sex trafficking was ongoing and widespread at their motels, including the subject locations named herein.

268. Use of the G6 Defendants' branded properties for sex trafficking is well known to G6 Defendants. Upon information and belief, before and at the time Jane Doe was trafficked at the subject Motel 6 properties, each of the THOMPSONS and the G6 Defendants monitored criminal activity occurring at the branded motels and were aware of activity indicating commercial sex, sex trafficking, and related crimes occurring at those branded motels, including the specific motel properties where Jane Doe was trafficked.

269. Defendants knew staff at the subject motel properties were facilitating sex trafficking and that it was generating revenue through policies that encouraged sex traffickers to operate at their brand properties, including but not limited to choosing not to implement policies and procedures known to be necessary to stop known trafficking; not requiring identification cards or "IDs"; allowing daily payments of cash for extended stays; complying with requests for rooms to be rented away from other guests; allowing traffickers to escort bruised and battered women, including Plaintiff, to and from rooms; allowing several buyers to come in and out of the rooms victims were trafficked in without identification; ignoring yelling and screaming from rooms where trafficking took place; ignoring obvious copious amounts of sex paraphernalia; not addressing the trafficking signs and reports of drugs, abuse and prostitution;

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

forming relationships with traffickers and treating traffickers like "regulars" with benefits by accommodating specific requests that entail known signs of trafficking and not reporting the trafficking or taking any steps to prevent or stop it.

270. Wyndham has known for decades that sex trafficking has been occurring at its properties, including its Travelodge branded properties and including the subject Travelodge. It has known that it is profiting from trafficking but has made a choice to adopt and enforce policies applicable to traffickers that are different than other guests-- that facilitate trafficking and fill traffickers' needs versus policies known to stop trafficking and stifle or deter traffickers.

271. Defendants have access to reviews left by guests on websites wherein guests frequently complain about the prevalence of obvious trafficking at their properties, hearing physical violence, and other signs of trafficking and overt, violent commercial sex, at the subject locations and at most Motel 6 and Travelodge locations. G6 Defendants and Wyndham have directly seen and responded to reviews regarding the same for several years before Plaintiff was trafficked.

272. In the years leading up to Plaintiff's trafficking, G6 Defendants and Wyndham saw specific reviews for the subject Motel 6s and Travelodge that described forced commercial sex occurring at those properties. Each made conscious choices to take actions to facilitate the reported trafficking and to condone and ratify the conduct of the employees that directly aided traffickers, and thus both knowingly participated in sex trafficking ventures, including the ventures that trafficked Plaintiff. Defendants all knew or should have known.

273. Information that has become public through news stories establishes the entrenched and pervasive nature of Defendants' role in providing venues where sex trafficking has continued unabated for years. Defendants have provided the means necessary for traffickers to traffic victims, including Jane Doe, and have done so

84

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

knowingly and with knowledge and notice of the fact that their policies and actions facilitate the trafficking.

274. During the period Jane Doe was trafficked at the subject locations named herein, there were obvious signs that her trafficker was engaged in sex trafficking.

275. Other girls were trafficked at the same motels at the same time as Jane Doe and that was obvious to Defendants too because their employees were around and able to view and hear the same red flags that Plaintiff could see and hear; Plaintiff witnessed employees witness red flags of trafficking, including her own.

276. Jane Doe's trafficker was often present with Jane Doe and other victims at check in and he and his associates would linger outside of the door or nearby while Jane Doe was forced to have sex with customers at the subject motels. This was all in plain sight of Defendants' employees and agents at the subject locations. Jane Doe's trafficker could be seen leaving the room when another male arrived and then returning as soon as that male left. This would happen multiple times a day for extended periods that Jane Doe was trafficked at Defendants' properties for years.

277. There was heavy foot traffic in and out of the rooms where Jane Doe was being harbored. This foot traffic involved men who were not motel guests. Several men came in and out of the subject hotel rooms in a single day. These individuals entered and left at unusual hours and were present at the motel for brief periods of time. Their comings and goings were visible to motel employees that were located at front desks and around the property. A reasonable motel would have seen these regular "red flag" interactions at their property in plain sight and Defendants should have seen it and did see it by and through their employees and agents.

278. There were obvious signs of trafficking consistent with sex trafficking, and which included well known "red flags" for trafficking in a motel, such as condoms, sex paraphernalia, drugs, blood, bodily fluids and lingerie. These things were not only

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

visible to but must have been seen by motel employees entering and cleaning the rooms or even just collecting the trash.

279. When forced and coerced into coming and going from the subject motel locations, Jane Doe looked unhealthy, unhappy, abused, and scared. Her trafficker and/or associates were always watching her, and her noticeable demeanor was visible to hotel employees they passed by.

280. G6 Defendants are currently litigating approximately one hundred and forty cases against it under the TVPRA for participating in sex trafficking ventures at their properties. They have been sued many more times than that under the TVPRA and numerous survivors have not yet filed claims. Many properties that are the subjects of lawsuits are still allowing sex trafficking to happen. G6 Defendants are continuing to profit from sex trafficking to this day.

281. Wyndham is currently litigation numerous cases against it under the TVPRA for participating in sex trafficking ventures at their branded properties. They too have been sued numerous times in recent years, and numerous survivors have not yet filed lawsuits. Wyndham is continuing to profit from sex trafficking to this day.

282. The motel locations named in this pleading are recognized trafficking areas and are well known as locations that regularly invite traffickers to use their rooms to traffic women like Jane Doe.

283. Motel 6, as well as all other Defendants, "left the light on" for Jane Doe's trafficker and several other traffickers and opened their doors to disgusting, inhumane abuse and sex trafficking so that they could reap the profits for room rentals.

284. Every day during the two years that Jane Doe was trafficked at these motels, the front desk and other staff at the subject motel locations assisted, supported, facilitated and engaged in numerous affirmative acts during their continuous and friendly business relationship with Jane Doe's trafficker and his associates.

285. Upon information and belief, multiple employees at the subject hotel locations named herein, including management-level employees, observed, or were made aware of these obvious signs of Plaintiff's trafficking while acting within the course and scope of their employment.

286. As such, Defendants knew and should have known that Jane Doe was being trafficked at the subject motel locations named herein.

### Defendants are Jointly Responsible for the Trafficking of Jane Doe.

287. Defendants G6 Defendants and the THOMPSONS were participants in a joint venture with each other, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

288. Upon information and belief, the operation of the subject Motel 6s were part of a single unified operation by G6 Defendants. Upon information and belief, the subject Motel 6s shared common parent companies, were subject to joint control, and operated as an integrated enterprise and/or as alter-egos.

289. Upon information and belief, G6 Defendants acted jointly to own, operate, control, manage, and supervise the subject Motel 6s. As an integrated enterprise and/or joint venture, G6 Defendants and THOMPSONS Defendants were separately and jointly responsible for compliance with all applicable laws.

290. Defendants Wyndham and KPK, INC. were participants in a joint venture with each other, and with the Khatris, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

291. Upon information and belief, the operation of the subject Travelodge by Wyndham was part of a single unified operation by Wyndham. Upon information and

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

belief, the subject Travelodge by Wyndham shared common parent companies, were subject to joint control, and operated as an integrated enterprise and/or as alter-egos.

292. Upon information and belief, Wyndham, its affiliates, and KPK, Inc. acted jointly to own, operate, control, manage, and supervise the subject Travelodge by Wyndham. As an integrated enterprise and/or joint venture, Wyndham and KPK, INC. Defendants were separately and jointly responsible for compliance with all applicable laws.

293. Defendants, and each of them, knowingly assisted, supported and facilitated Plaintiff's traffickers in violations of Section 1591 at the subject properties. Each of the Defendants had a continuous business relationship with Plaintiff's traffickers such that the traffickers continued to go back over and over again to Defendants' properties and give Defendants money to traffic victims, including Plaintiff, inside their hotels.

294. Defendants took acts in furtherance of the trafficking venture, including but not limited to (1) erroneously recording the room in which Plaintiff was trafficked as having a single occupant; (2) expecting and fulfilling traffickers needs with rooms in the back and/or specific rooms; (3) watching out for law enforcement and assisting the trafficker and his associates with their activities and conduct; (4) chose not to implement trafficking prevention training programs; (5) collected room reservation, payment, occupancy and browsing data; (6) had control over policies and operations; and (7) at times accepted more money for helping the traffickers, as well as all other direct actions alleged above.

**Defendants are Jointly and Severally Liable for Plaintiff's Damages**

295. The venture or ventures in which each Defendant participated were the direct, producing, and proximate causes of the injuries and damages to Jane Doe.

296. Under the TVPRA, Defendants are jointly and severally liable for all

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
619) 771-3473

damages that a jury awards to Jane Doe for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking at their properties regularly and constantly from 2015 through 2017.

**CAUSES OF ACTION AGAINST ALL DEFENDANTS**

**Sex Trafficking under 18 U.S.C. § 1595**

1. **Cause of Action: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a) (All Defendants)**

297. Jane Doe realleges and incorporates the allegations in paragraphs 1 through 296.

298. Jane Doe is a victim of sex trafficking within the meaning of §1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

299. Defendants are perpetrators within the meaning of 18 U.S.C §1595(a) because they:

    a. Violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, they harbored individuals, including Plaintiff, knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at its respective hotel property; and

    b. Violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, it knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at its respective hotel locations.

300. Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

cause Jane Doe to suffer substantial physical and psychological injuries and other damages as a direct and proximate result of being trafficked and sexually exploited at the Defendants' motel locations.

**2. Beneficiary Liability under §1595 (a) of the TVPRA (all Defendants).**

301. Jane Doe realleges and incorporates the allegations in Paragraphs 1 through 296.

302. Jane Doe is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

303. Through acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and traffickers, including Plaintiff's trafficker, despite the fact that each defendant knew or should have known that this trafficker was engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2) at Defendants' properties, including the subject locations alleged in this Complaint. As more specifically alleged above, Defendants took part in a common undertaking and enterprise involving risk and potential profits, and here, actual profits resulted. Defendants' employees and agents had a direct association with the trafficker and knowingly facilitated the trafficker and his associates, which, as shown more thoroughly in the incorporated allegations above, showed a continuous business relationship between the trafficker and Defendants, and each of them, such that the pattern of conduct appears to be a tacit agreement between the traffickers and each Defendant. Thus, Defendants are each liable as a beneficiary under 18 U.S.C §1595(a).

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

304. Through the acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other in the operations of its respective hotel locations even though Defendants knew or should have known that this venture was violating 18 U.S.C §§ 1591(a) and 1595(a).

305. Violations of 18 U.S.C §1595(a) by Defendants as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel locations.

### 3. Cause of Action: Vicarious Liability for TVPRA Violations (G6 Defendants and Wyndham)

306. Jane Doe realleges and incorporates the allegations in Paragraphs 1 through 300.

307. Under the TVPRA and the federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture.

308. Under the TVPRA and the federal common law, an entity is vicariously liable for the acts and omissions of its alter-egos.

309. THOMPSONS Defendants acted as the actual agents of G6 Defendants when operating its respective motel locations and in committing the wrongful acts and inactions alleged herein.

310. KPK, INC. and the Khatris acted as the actual agents of WYNDHAM HOTELS & RESORTS, INC. when operating its respective Travelodge by Wyndham location and in committing the wrongful acts and inactions alleged herein.

311. Through the wrongful acts and omissions described throughout this Complaint, G6 Defendants exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisees to operate its

91

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

respective motel properties; and as to the properties it directly owned and controlled, it did the same.

312. G6 Defendants are vicariously liable for the TVPRA violations of its franchisees, the THOMPSONS Defendants, and the subagents of such.

313. Through the wrongful acts and omissions described throughout this Complaint, Wyndham exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisees to operate its respective hotel properties; and as to the properties it directly owned and controlled, it did the same.

314. Wyndham is vicariously liable for the TVPRA violations of its franchisees, KPK, INC. Defendant, and the subagents.

315. Additionally, on information and belief, each of the G6 Defendants participated in a joint venture operating the subject Motel 6s when they owned, operated, and/or controlled each property during the trafficking period. They had highly integrated operations at the motels, shared revenue and profits generated from the motels, and exercised mutual control over the venture at the motels. They functioned as a single integrated entity and/or as alter-egos of one another and are therefore each directly and proximately liable for the harms and damages caused to Jane Doe as a result.

316. Wyndham and KPK, INC. had highly integrated operations at the subject Travelodge by Wyndham, shared revenue and profits generated from the Travelodge by Wyndham, and exercised mutual control over the venture at the hotel. They operated together in the operation of the Travelodge and in obtaining a benefit from the trafficking of Plaintiff, and as such each are directly and proximately liable for the harms and damages caused to Jane Doe as a result.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

## JOINT AND SEVERAL LIABILITY

317. "Joint and several liability 'applies when there has been a judgment against multiple defendants."[54] If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the Jane Doe recovers only once for the full amount.[55]

318. Federal law allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, without regard to his proportion of fault and even if the concurrent negligence of others contributed to the incident.[56]

319. Jane Doe alleges Defendants, and each of them, should be held joint and severally liable to Jane Doe for the totality of her injuries and damages that arose from the trafficking alleged herein.

## DAMAGES

320. Defendants' wrongful acts and omissions described above, individually and collectively, caused Jane Doe to sustain legal damages.

321. Jane Doe did suffer the following injuries as a direct and proximate result of Defendants', and each of their, wrongful actions and inactions alleged herein, and as such Jane Doe is entitled to be compensated for past and future personal injuries, non-economic damages, and economic damages, see, e.g., 18 U.S.C. §§ 1593, 1595, including:

    a. actual damages;

    b. direct damages;

    c. incidental and consequential damages;

---

[54] *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994).

[55] See 735 ILCS 5/2-1117; see Restatement (Second) of Torts § 875 (1977); *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

[56] *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979) (citations omitted); *Manganiello v. City of New York*, No. 07 Civ. 3644, 2008 WL 2358922 (S.D.N.Y. June 10, 2008), affirmed, 612 F.3d 149 (2nd Cir. 2010).

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

d. lost earnings and lost earning capacity;

e. necessary medical expenses;

f. life care expenses;

g. physical pain and suffering;

h. physical impairment;

i. mental anguish and emotional distress damages (until trial and in the future);

j. restitution;

k. unjust enrichment; and

l. disgorgement of profits.

322. Jane Doe is entitled to pre- and post-judgment interest at the maximum legal rates.

## PUNITIVE DAMAGES

323. Jane Doe is entitled to punitive damages under the applicable statutes against Defendants, and each of them, for each and every cause of action alleged herein, as a result of Defendants' outrageous, wanton, willful, and malicious conduct underlying Jane Doe's claims. See *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).

## COSTS AND ATTORNEY FEES

324. Jane Doe is entitled to recover costs and reasonable, necessary, or customary attorneys' fees from Defendants under the applicable statutes. See 18 U.S.C. § 1595(a).

325. All conditions precedent to Jane Doe's recovery of its costs and attorneys' fees have occurred or will occur prior to entry of judgment in this suit.

## JURY DEMAND

326. Jane Doe requests a jury trial in this action.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

## PRAYER

327.    For these reasons, Jane Doe respectfully prays that this case be set for trial before a jury, and that upon a final hearing of the cause, judgment be entered for Jane Doe against Defendants jointly and severally, for:

a.    all economic damages to which she is entitled;

b.    all actual damages to which she is entitled;

c.    all incidental and consequential damages to which she is entitled;

d.    all mental anguish and emotional distress damages to which she is entitled;

e.    all restitution damages to which she is entitled;

f.    all disgorgement of profits to which she is entitled;

g.    all unjust enrichment damages to which she is entitled;

h.    exemplary, treble, and/or punitive damages;

i.    attorneys' fees and costs of suit;

j.    pre-judgment and post-judgment interest at the highest rate allowed by law; and

k.    all other relief to which she is entitled in law or in equity.

SINGLETON SCHREIBER

Dated: December 31, 2025

/s/ Meagan Verschueren
Brett Schreiber (SBN 239707)
bschreiber@singletonschreiber.com
Meagan Verschueren (SBN 313117)
mverschueren@singletonschreiber.com
Katie Llamas (SBN 303983)
kllamas@singletonschreiber.com
591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Tel. (619) 771-3473

Attorneys for Plaintiff JANE DOE

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473