UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual,<br>Plaintiff,<br>v.<br>G6 HOSPITALITY, LLC, et al.,<br>Defendants. | No. 2:25-cv-03778-JAM-SCR<br><br>**ORDER DENYING MOTION TO DISMISS** |

Plaintiff Jane Doe alleges that she was sex trafficked at multiple hotels from 2015 through 2017, include a hotel owned by franchisees of Defendant Wyndham Hotels & Resorts, Inc. ("Wyndham"). Wyndham now moves to dismiss Plaintiff's claims for direct perpetrator liability, direct beneficiary liability, and vicarious liability brought against Wyndham under the Trafficking Victims Protection Reauthorization Act ("TVPRA") on the basis that Plaintiff fails to plausibly plead Wyndham's participation in a trafficking venture, its actual or constructive knowledge of Plaintiff's alleged trafficking, or any basis to hold Wyndham vicariously liable for the alleged TVPRA violations of its franchisee.

As discussed below, the Court disagrees and finds that Plaintiff's claims are adequately pled. Accordingly, Wyndham's Motion to Dismiss is denied.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiff, a sex trafficking survivor, alleges she was continually trafficked at five different hotels in the Turlock and Modesto areas of California from 2015 through 2017. Compl. ¶¶ 11–12, 83-84, ECF No. 1. Plaintiff alleges that each of these hotels had knowledge of and participated in her trafficking by continuing to rent rooms to her traffickers despite "red flags" that rooms were being used for such purpose, including Plaintiff being taken to the hotels over and over again while "looking physically abused and drugged"; "loud" beatings carried out "at the motels"; Plaintiff's inability to make prolonged eye contact or speak freely with employees; Plaintiff "being watched and openly controlled, manhandled, and drug around the properties by men"; "constant" non-guest men parking and going directly to the room where Plaintiff was sold; sounds of commercial sex; signs of commercial sex such as "condoms in trash, blood on towels, extra sheets being requested"; traffic, money transactions, and abuse on hotel cameras; hotel employees witnessing Plaintiff "cry, scream for help and otherwise plead for her life"; payment in cash for long, extended stays; reviews consistent with employees allowing crime at the hotels; and signs of others being trafficked for sex at the hotels as well. Id. ¶¶ 83–88. Plaintiff alleges she suffered numerous serious physical injuries and severe mental and emotional trauma as a result of being

trafficked. Id. ¶ 89.

Of relevance here, Plaintiff alleges she was harbored and forced to engage in commercial sex against her will at a franchised Travelodge by Wyndham hotel owned and operated by Defendant KPK, Inc. ("KPK") located at 201 West Glenwood Avenue in Turlock, California (the "Travelodge"). Id. ¶ 12, 30, 83, 155. Plaintiff alleges that, while KPK entered a franchise agreement with Wyndham to own and operate the Travelodge, Wyndham maintained substantial control of the property with regards to how the property was staffed, operated, managed, and responded to crime. Id. ¶¶ 155-59. For example, Wyndham controlled: (1) the marketing for the Travelodge, id. ¶¶ 168, 186(v); (2) the policies, practices, and procedures for safety, security, and to prevent trafficking and other crime, id. ¶¶ 186, 239, 242; (3) the day-to-day operation of the hotel through data and reports obtained through the property management system and other software systems Wyndham required its franchisees to use, id. ¶ 186; (4) employee hiring (including job postings), wages and benefits, education, training (including anti-trafficking training), responses to crime, discipline, and termination, id. ¶¶ 184, 186, 242; and (5) technology, software, and data programs, including guest relations software, room reservation software, and customer complaints, id. ¶¶ 186, 243. Wyndham also monitored the property through consistent communications with hotel employees and management, generating reports and analysis of guest complaints and online reviews, auditing the books and records, and conducting physical on-site inspections. Id. ¶¶ 186(s)-(t), 186(q), 197, 240-41. Wyndham retained the right

to issue fines, require additional training, impose detailed corrective action plans, and terminate the franchise agreement if the hotel violated Wyndham's rules, policies, expectations, and/or protocols. Id. ¶¶ 186(u), 240.

While being trafficked at the Travelodge, Plaintiff alleges she was openly sold for sex for days to weeks at a time multiple times per day and night at all hours; physically, emotionally, and psychologically abused; and controlled by her traffickers. Id. ¶¶ 12, 83, 86-87, 155, 224. Plaintiff alleges that Wyndham's direct control of the hotel, its data and software systems, and its audits alerted it to these signs. Id. ¶¶ 223-24. Wyndham also had policies in place that mandated KPK and staff report crime and trafficking to it. Id. ¶¶ 176, 224. KPK and staff, in turn, observed the red flags of trafficking at the Travelodge and reported them to Wyndham. Id. KPK owners and staff also directly communicated with Plaintiff's traffickers and Wyndham about the trafficking. Id. ¶ 202. Finally, Wyndham oversaw and regularly inspected the Travelodge, and its own employees directly observed these red flags and Plaintiff being trafficked. Id. ¶¶ 176, 203, 216, 218, 223, 252.

Plaintiff alleges that Wyndham's knowledge was compounded by it and its agents' active participation in and facilitation of Plaintiff's trafficking at the Travelodge. Plaintiff alleges that Wyndham created a safe haven for Plaintiff's traffickers by maintaining policies and procedures that enabled the traffickers to evade detection by law enforcement. Id. ¶¶ 246, 252, 293. Wyndham inadequately trained staff on sex trafficking, chose not to report known or suspected sex trafficking, and implicitly

encouraged sex trafficking by creating an environment where traffickers could operate without interference or detection. Id. ¶¶ 252, 293. For example, Wyndham and KPK did not require IDs at check in, allowed victims and buyers to enter the rooms without IDs and non-guests to park, and accepted cash and other anonymous forms of payment for extended stays. Id. ¶¶ 181, 207, 252, 269. Despite all the red flags and knowing that the rooms were being used for trafficking, Wyndham and KPK continued to rent rooms to Plaintiff's traffickers and to comply with their requests. Id. ¶ 249. Travelodge staff accommodated the traffickers' requests for rooms in specific areas, such as at the back of hotel, to make it easier for them to conduct their business. Id. ¶¶ 181, 207, 212. They accepted late, cash payments from traffickers on the understanding that payment would be provided after the forced commercial sex. Id. ¶¶ 213. They would not call the police in response to trafficking signs and loud noises of abuse but would instead tell the traffickers to be quieter. Id. ¶ 246. And rather than interfere with the trafficking, staff would place other guests that complained about the illegal activities on a "Do Not Rent" list and would work with the traffickers to encourage buyers to participate. Id. ¶¶ 215, 225. In exchange for these special accommodations and for permitting trafficking on their property, Wyndham and KPK would often charge higher room rates to traffickers. Id. ¶¶ 214, 255. Employees would also receive extra cash for making these arrangements. Id. ¶ 215. Further, the Travelodge owners even purchased sex with Plaintiff from her traffickers. Id. ¶ 82. In this way, Plaintiff alleges Wyndham and KPK maintained a symbiotic relationship with the

traffickers. Id. ¶¶ 47, 215.

Plaintiff filed this lawsuit on December 31, 2025, alleging three causes of action for (1) perpetrator liability, (2) beneficiary liability, and (3) vicarious liability under 18 U.S.C. § 1595 of the TVPRA. Id. ¶¶ 297-316. Defendants filed a Motion to Dismiss on March 16, 2026, also filing a Request for Judicial Notice in support of that motion. Mem. P & A in Support of Mot. Dismiss ("Mot."), ECF No. 34-1; Def.'s Req. Judicial Notice ("Def.'s RJN"), ECF No. 34-2. This matter is fully briefed and was submitted without oral argument under Local Rule 230g. Opp'n Mot. ("Opp'n"), ECF No. 41; Obj. Def.'s RJN, ECF No. 42; Pl.'s Req. Judicial Notice ("Pl.'s RJN"), ECF No. 43; Reply Mot. ("Reply"), ECF No. 48; ECF No. 59.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The court assumes all factual allegations are true and "construe[s] them in the light most favorable to the nonmoving party." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995) (citing Everest & Jennings, Inc. v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994)). That said, if the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted.

Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. Iqbal, 556 U.S. at 678. In the same vein, conclusory or "formulaic recitation[s] of the elements" do not alone suffice. Id. (internal quotations and citations removed). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. OPINION

Wyndham argues that the TVPRA limits civil liability to those who perpetrate trafficking crimes or knowingly benefit from participation in a venture that they know is trafficking the plaintiff. However, Wyndham argues that Plaintiff does not plausibly allege these elements as to Wyndham, as Plaintiff acknowledges that Wyndham did not own, operate, or manage the Travelodge at which she was allegedly trafficked and does not allege that Wyndham had any interaction with Plaintiff or her alleged traffickers whatsoever. Rather, Wyndham argues that Plaintiff relies on boilerplate, conclusory, and ultimately implausible "information and belief" allegations that Wyndham employees observed Plaintiff being trafficked during a sporadic

quality inspection or that Travelodge employees were “in on” the scheme with her traffickers yet reported their conduct to Wyndham. Further, Wyndham argues that Plaintiff fails to plausibly establish that Wyndham “participated” in any venture that it knew or should have known was trafficking her. Thus, Wyndham seeks dismissal of Plaintiff’s direct perpetrator and beneficiary claims.

Alternatively, Plaintiff seeks to hold Wyndham vicariously liable for alleged TVPRA violations of the third-party franchisee, KPK, that did own and operate the Travelodge. However, Wyndham argues that Plaintiff fails to plausibly allege an agency or joint employer relationship between these entities. Wyndham posits that Plaintiff’s allegations are contradicted by the terms of the very franchise agreement she repeatedly incorporates in the Complaint. As such, Wyndham argues Plaintiff’s claim for vicarious liability should also be dismissed

As discussed further below, the Court finds that Plaintiff’s claims for direct beneficiary, direct perpetrator, and vicarious liability are adequately pled, and denies Wyndham’s motion to dismiss Plaintiff’s claims.

A. <u>Requests for Judicial Notice</u>

In support of Wyndham’s Motion to Dismiss, Wyndham asks the Court to take judicial notice of seven exhibits comprised of the October 10, 2003, franchise agreement between KPK and Wyndham’s subsidiary, Travelodge Hotels, Inc. (“Franchise Agreement”), as well as six other complaints filed by Plaintiff’s counsel on behalf of sex trafficking survivors in other federal TVPRA cases.

Def.'s RJN at 1. Wyndham argues that the Court may consider the Franchise Agreement, Exhibit A to Wyndham's Request for Judicial Notice, as it is referenced throughout Plaintiff's Complaint and is therefore incorporated by reference. Id. at 2-3. Wyndham further argues that the Court may consider the complaints filed by Plaintiff's counsel in other cases, Exhibits B through G of Wyndham's Request for Judicial Notice, under Federal Rule of Evidence 201 because the existence and contents of the complaints are matters of public record that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Id. at 3-4.

In response, Plaintiff objects to the Court taking judicial notice of the Franchise Agreement because "discovery has not yet begun and Plaintiff's undersigned counsel is unable to verify facts surrounding the franchise agreement to determine whether it is current, accurate, implemented as expressly stated, etc." Obj. Def.'s RJN at 1. Plaintiff argues that incorporation-by-reference rule is inapplicable because Plaintiff disputes the authenticity of the franchise agreement. Id. at 2-4. Plaintiff also asks the Court to take judicial notice of several court orders and court dockets, Exhibits 1 through 6 of Plaintiff's Request for Judicial Notice, related to the complaints referenced in Wydnham's Request for Judicial Notice. Pl.'s RJN at 1-2.

The Court takes judicial notice of Exhibits B through G of Wyndham's Request for Judicial Notice, as Plaintiff does not object to that request. The Court also takes judicial notice of Exhibits 1 through 6 of Plaintiff's Request for Judicial Notice,

as Wyndham does not object to that request.

As for Exhibit A to Wyndham's Request for Judicial Notice, the Franchise Agreement, the Court finds that it is incorporated by reference into the Complaint. Under the doctrine of incorporation-by-reference, the Court may consider a document not attached to the complaint provided the complaint "necessarily relies" on the document or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

Here, Plaintiff's Complaint refers extensively to the existence of, and purported rights and obligations conferred by, a franchise agreement between KPK and Wyndham. See Compl. ¶¶ 31, 155, 159, 169, 176, 179, 182, 236, 237, 239, 251, 253. Wyndham's counsel attests that the Franchise Agreement attached as Exhibit A is the agreement referred to throughout the Complaint. Def.'s RJN at 1-3. Plaintiff objects to incorporation of the Franchise Agreement on the basis that Plaintiff's counsel has not yet been able to authenticate the document. The Court overrules Plaintiff's objection. Where a plaintiff offers only "perfunctory challenges" that fail to raise a "reasonable dispute" as to the authenticity of a document offered for incorporation by reference, courts may overrule the objection and still consider the materials incorporated by reference for

purposes of resolving a motion to dismiss. See Dimas v. JPMorgan Chase Bank, N.A., No. 17-CV-05205-LHK, 2018 WL 809508, at *6 (N.D. Cal. Feb. 9, 2018) (citing Allen v. United Fin. Mortg. Corp., 660 F. Supp. 2d 1089, 1093 (N.D. Cal. 2009)). Without a reasonable basis to question the authenticity of the document, the Court deems the Franchise Agreement incorporated into the Complaint by reference.

B. Plaintiff's Claims for Direct Beneficiary and Perpetrator Liability are Adequately Pled

The TVPRA permits victims of sex trafficking to pursue civil claims against two categories of defendants: (1) the criminal "perpetrator(s)" of their trafficking, and (2) "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" their trafficking. 18 U.S.C. § 1595(a). Here, Plaintiff asserts both beneficiary and perpetrator liability theories against Wyndham. The Court addresses each in turn below.

1. Direct Beneficiary Liability

To state a claim for beneficiary liability, a plaintiff "must allege facts plausibly establishing that the defendant (1) knowingly benefitted financially, (2) from participation in a venture, (3) that the defendant knew or should have known engaged in sex trafficking as defined in 18 U.S.C. § 1591." B.J. v. G6 Hospitality LLC, No. 22-cv-03765-MMC, 2023 WL 6120682, at *3 (N.D. Cal. Sept. 18, 2023) (cleaned up) (quoting A.B. v. Shilo Inn, Salem, LLC, No. 3:23-cv-00388-IM, 2023 WL 5237714, at *4 (D. Or. Aug. 15, 2023)); Ratha v. Phatthana Seafood Co., 35 F.4th

1159, 1175 (9th Cir. 2022). Wyndham argues that Plaintiff fails to adequately plead two of these requisite elements: (1) that Wyndham "participated" in a venture or (2) that it knew or should have known that venture was trafficking Plaintiff at the Travelodge. Mot. at 9-10. First, Wyndham argues that Plaintiff fails to establish a sufficient connection between Wyndham and the trafficking venture, as "Plaintiff admits that the Facility was operated and staffed by KPK; that her traffickers rented rooms directly from KPK staff, in person; and that the only personnel she and her trafficker interacted with were KPK employees." Id. at 11-13. Second, Wyndham argues Plaintiff fails to allege Wyndham had any "culpable knowledge" of her trafficking, because Plaintiff's allegations that Wyndham directly observed her at the Travelodge and received a report of trafficking activities from KPK are implausible, and there were insufficient "signs" from which Wyndham should have deduced that Plaintiff was being sex trafficked at the Travelodge. Id. at 14-18.

As discussed below, the Court disagrees and finds that Plaintiff has adequately pled her direct beneficiary claim.

a. Wyndham's Participation in a Venture that Trafficked Plaintiff

To plead that a defendant participated in a venture, a plaintiff must allege they "took part in a common undertaking or enterprise involving risk and potential profit." Doe v. Wyndham Hotels & Resorts ("Doe v. Wyndham"), No. 23-cv-01676-DAD-CSK, 2025 WL 85831, at *5 (E.D. Cal. Jan. 7, 2025) (citation omitted). A plaintiff can "connect the dots" of a specific defendant's

participation in a venture through one of two routes: allegations that show (1) a "direct association" between the defendant and the plaintiff's trafficker, or (2) a "continuous business relationship between the trafficker and the defendant such that it would appear that the trafficker and the defendant have established a pattern of conduct or could be said to have a tacit agreement." Id. (citation omitted). To show a continuous business relationship, it is enough that a plaintiff was repeatedly trafficked at the hotel and that the defendant knew or should have known of the trafficking. Id.; Doe (S.A.S.) v. ESA P Portfolio LLC, No. 23-cv-06038, 2024 WL 3276417, at *7 (W.D. Wash. July 2, 2024).

Here, Plaintiff sufficiently alleges that, for two years, she was sex trafficked for weeks at a time at the Travelodge. Compl. ¶¶ 155, 224. Plaintiff further alleges that Wyndham directly assisted, supported, and facilitated Plaintiff's known trafficking by maintaining policies and procedures that enabled Plaintiff's traffickers to operate without detection and by providing her traffickers with a venue to sell her for sex. Id. ¶¶ 175, 186, 223-24, 239, 242-43. Plaintiff also alleges that Wyndham and its agents actively accommodated Plaintiff's traffickers in exchange for profits, as Travelodge staff (1) complied with the traffickers' requests for rooms at the back of hotel, id. ¶¶ 181, 207, 212; (2) accepted late, cash payments for rooms on the understanding that payment would be provided after the forced commercial sex, id. ¶¶ 213-14; and (3) placed other guests that complained about the crime on a "Do Not Rent" list and told traffickers to be quieter, id. ¶¶ 215, 246. In

exchange, Wyndham and KPK, who jointly controlled the room reservation system and rates, would often charge higher room rates to traffickers. Id. ¶¶ 168, 214, 255.

Together, the Court finds these allegations plausibly establish Wyndham's participation in a venture with Plaintiff's traffickers, as Plaintiff alleges Wyndham financially benefitted from traffickers renting rooms in its hotel by maintaining policies that enabled trafficking, actively accommodating the traffickers' requests, and charging them extra to do so, all while controlling hotel operations and, as discussed further below, knowing about the trafficking. See, e.g., Doe v. Wyndham, 2025 WL 85831, at *7-9 (finding that Wyndham had a continuous business relationship with traffickers when Wyndham (1) created an environment that allowed trafficking to operate, staff accommodated specific requests by the traffickers, and the subject hotel was one of the traffickers' preferred hotels that they regularly used, (2) Wyndham knew or should have known of the trafficking, and (3) Wyndham still rented rooms to the traffickers and controlled and oversaw guest bookings and payments); Doe v. Wyndham Hotels & Resorts, Inc. ("Doe v. Wyndham II"), No. 24-CV-217 JLS (AHG), 2025 WL 824369, at *13-15 (S.D. Cal. Mar. 14, 2025)(similar); Doe (S.A.S.), 2024 WL 3276417, at *7 (similar); J.M. v. Choice Hotels Int'l, Inc., No. 22-cv-00672, 2023 WL 3456619, at *3-4 (E.D. Cal. May 15, 2023) (similar).

Thus, the Court finds Plaintiff has adequately alleged Wyndham participated in a venture that trafficked Plaintiff.

///

///

b. Wyndham's Knowledge of a Venture that Was Engaged in Conduct that Violated the TVPRA

To satisfy the knowledge element, Plaintiff must show that Wyndham either had "actual knowledge of her sex trafficking" or, "at the very least, rented rooms to people [it] should have known were engaging in her sex trafficking." See J.C. v. Choice Hotels Int'l, Inc., No. 20-cv-00155-WHO, 2020 WL 6318707, at *4 (N.D. Cal. Oct. 28, 2020). Courts have found this element satisfied where there was evidence of commercial sex together with control or abuse, such as where the plaintiff "displayed visible signs of abuse, like bruising, or physical deterioration, like malnourishment; the trafficker overtly exerted control over the plaintiff in public areas of the hotel; screaming could be heard from the plaintiff's hotel room; or the trafficker or others physically assaulted the plaintiff in public areas of the hotel." A.B. v. Interstate Mgmt. Co., 746 F. Supp. 3d 997, 1008 (D. Or. 2024).

Here, Plaintiff properly alleges Wyndham was on direct notice of trafficking at the Travelodge during the time Plaintiff was trafficked and had surveillance footage of the same. Compl. ¶¶ 166, 175. Plaintiff pleads there were numerous "red flags" of commercial sex, such as sex paraphernalia, solicitation, and heavy foot traffic from buyers while Plaintiff and other victims were forced to have sex multiple times per day and night for weeks at a time. Id. ¶¶ 83–88, 207, 217, 229–31, 246. Plaintiff also pleads there were plain signs of control and abuse, including Plaintiff and other victims looking malnourished, bruised, drugged, abused, and unhealthy, loud sounds of physical

abuse, Plaintiff's traffickers always watching her, and more. Id. In addition, KPK owners and staff communicated with Plaintiff's traffickers and Wyndham about the trafficking, including Plaintiff's, and Wyndham and KPK charged traffickers extra for rooms. Id. ¶¶ 202, 214, 255. Finally, Plaintiff alleges that Wyndham performed on-site inspections at the hotel and Wyndham agents and employees were physically at the hotel often while Plaintiff was being trafficked there and either observed or were made aware of Plaintiff's trafficking. Id. ¶¶ 223, 232.

The Court finds these allegations sufficient to show Wyndham knew or had reason to know of the trafficking venture. Plaintiff alleges that numerous red flags of trafficking were readily observable at the Travelodge during the relevant time. Courts have recognized similar allegations of "red flags" to support a showing that the defendant hotel had at least constructive knowledge of trafficking. See, e.g., J.C., 2020 WL 6318707, at *5 (holding that the plaintiff "sufficiently allege[d] details" of "apparent red flags" that she and her traffickers exhibited at the defendant hotels, including "traffickers checking [plaintiff] in and then not proceeding to the room; paying for the room in cash and paying in smaller increments; [and] a steady stream of men, who were not registered hotel guests, entering and exiting [plaintiff]'s room." (cleaned up)); R.T. v. RRI W. Mgmt. LLC, No. 24-cv-590, 2025 WL 961531, at *4 (W.D. Wash. Mar. 31, 2025) (finding plaintiff sufficiently alleged constructive knowledge when plaintiff alleged that "traffickers directly interacted with hotel employees and paid them to act as lookouts or informants";

plaintiff and other trafficking victims "walked around the hotel grounds impaired by drugs or alcohol, lack of sleep and basic hygiene 'with bruises, and malnourished and in sexually explicit clothing'"). Further, Plaintiff alleges that Wyndham had reporting procedures under which KPK and its employees were mandated to and did report these red flags, id. 176, 224; identified these red flags through its room reservation, security, management, and guest data systems and audits, id. ¶¶ 175, 186, 223-24, 243; and directly observed the trafficking during oversight and inspections, id. ¶¶ 176, 203, 216, 218, 223, 252. As this Court finds here, other Courts have found similar allegations sufficient to support liability against hotel franchisors. See, e.g., J.C., 2020 WL 6318707, at *5-7 (holding the hotel franchisors directly "participated in a venture" because they did not stop the plaintiffs sex trafficking, even though the franchisee hotels' staff reported signs of trafficking up the chain, as required under the franchisors' own corporate policies); Doe v. Wyndham, 2025 WL 85831, at *7-9 (denying Wyndham's motion to dismiss where plaintiff alleged hotel staff witnessed signs of her traffickers' activities, were required to report suspected trafficking, and on information and belief, actually did so).

2. Direct Perpetrator Liability

To state a claim for perpetrator liability, Plaintiff must allege facts plausibly establishing that Wyndham (1) "knowingly harbored or maintained [her] with knowledge that fraud or force would be used to cause her to engage in a commercial sex act," or (2) benefited from "assisting, supporting, or facilitating" the

trafficking venture with "actual knowledge of the trafficking." B.J., 2023 WL 6120682, at *11; Doe v. Hilton Domestic Operating Co., 795 F. Supp. 3d 1294, 1310 (W.D. Wash. 2025). "What the statute requires is that the defendant kn[ew] in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution." J.M., 2023 WL 3456619, at *2 (quoting Noble v. Weinstein, 335 F. Supp. 3d 504, 517-518 (S.D.N.Y. 2018)).

Wyndham argues that Plaintiff fails to plausibly allege perpetrator liability under either theory. First, Wyndham argues that Plaintiff fails to allege Wyndham "harbored" Plaintiff, as Wyndham did not own, operate possess, or manage the Travelodge, and Plaintiff's traffickers rented rooms directly from KPK employees, not Wyndham. Mot. at 18. Wyndham further argues that Plaintiff fails to plead Wyndham had any actual knowledge of her trafficking. Id.

Again, the Court disagrees and finds that Plaintiff has adequately pled perpetrator liability. As discussed in Section III.B.1 supra, Plaintiff has alleged in detail the many reasons why the Travelodge's staff and manager knew or should have known that she was present as a victim of commercial sex trafficking. As to Wyndham, Plaintiff adequately explains that Wyndham exercised day-to-day control over the Travelodge through centralized corporate systems, training, and policies; that Wyndham and KPK jointly controlled the room reservation system and shared in the profits from room rentals; and that Wyndham maintained and enforced training, policies, and procedures on human trafficking that required reporting of the many red flags

hotel staff saw to Wyndham. These allegations are sufficient to survive this motion to dismiss. Plaintiff's claim that Wyndham knowingly harbored her while also knowing that she was being coerced into commercial sex trafficking, or that Wyndham benefitted from facilitating or assisting the trafficking operation with actual knowledge of the trafficking is allowed to proceed. See, e.g., J.M., 2023 WL 3456619, at *2-3 (perpetrator liability plausibly alleged against franchisor where plaintiff was held at franchisee hotel for weeks at a time, her trafficking was open and obvious to staff, and staff were required to and did report to franchisor); Doe A v. Seatac Hotels LLC, No. C24-1270, 2025 WL 474233, at *5 (W.D. Wash. Feb. 12, 2025) (similar).

C. Plaintiff's Claim for Vicarious Liability is Adequately Pled

The TVPRA does not explicitly address vicarious liability, but "statutes are presumed not to disturb the common law, unless the language of a statute [is] clear and explicit for this purpose." State Eng'r of Nev. v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians of Nev., 339 F.3d 804, 814 (9th Cir. 2003) (internal quotation marks omitted). Many courts have found that vicarious liability principles apply to the TVPRA. See, e.g., Doe (K.R.D.) v. Hilton Worldwide Holdings Inc., 798 F. Supp. 3d 1082, 1090-91 (N.D. Cal. 2025); Doe v. Wyndham II, 2025 WL 824369, at *16; J.M., 2022 WL 10626493, at *5. To show vicarious liability, a plaintiff must allege (1) an underlying violation of the TVPRA by the defendant's franchisee and (2) that franchisors and their corresponding hotels were in an agency relationship. A.B. v. Hilton Worldwide Holdings, Inc., 484 F. Supp. 3d 921, 939

(D. Or. 2020). Under these principles, an agency relationship exists if the franchisor has the right to substantially control its franchisee's day-to-day operations. Doe A v. Seatac, 2025 WL 474233, at *5-6; B.M. v. Wyndham Hotels & Resorts, Inc., No. 20-cv-00656, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020).

Wyndham does not contest that Plaintiff has adequately pled underlying violations of the TVPRA by KPK. See Mot. at 18-21. Rather, Wyndham argues that the allegations of control are vague, conclusory, and contradicted by the Franchise Agreement. Id. However, Plaintiff specifically enumerates the aspects of the Travelodge's operations controlled by Wyndham, alleging that Wyndham controlled day-to-day operations, employee hiring, wages and benefits, education, training (including anti-trafficking training), responses to signs of crime and trafficking, discipline, termination, room reservation systems, and more. Compl. ¶¶ 184, 186, 242-43. These allegations of substantial control are sufficient at this stage to establish agency liability. See, e.g., Doe A v. Seatac, 2025 WL 474233, at *5-6 (concluding franchisor's control through centralized reservations systems, policies, brand standards, and training, including on trafficking, plausibly alleged an agency relationship); B.M., 2020 WL 4368214, at *6-7 (similar); A.B., 484 F. Supp. 3d at 939-41 (similar); J.M., 2022 WL 10626493, at *5 (similar).

Further, while Wyndham argues that the "possible control measures Plaintiff enumerates are squarely contradicted by KPK's franchise agreement," Mot. at 20, the language in the agreement is not necessarily controlling. As California courts have held, an agency relationship may be implied from the circumstances and

conduct of the parties. Michelson v. Hamada, 29 Cal. App. 4th 1566, 1579-80 (1994). And "[a]lthough agency is a consensual relationship, how the parties to any given relationship label it is not dispositive." People v. Johnsen, 10 Cal. 5th 1116, 1154 (2021) (quoting Restatement (Third) of Agency, § 1.02 cmt. a) (Am. L. Inst. 2006). Indeed, the Complaint alleges the franchise agreement was intentionally vague to avoid liability and is not comprehensive or truly representative of the day-today relationship between Wyndham and its franchisee. Compl. ¶ 182.

Thus, the Court denies Wyndham's motion to dismiss Plaintiff's vicarious liability claim.

**IV. ORDER**

For the reasons set forth above, Defendant Wyndham Hotels & Resorts, Inc.'s Motion to Dismiss (ECF No. 34) is DENIED. Wyndham shall file its Answer to the Complaint within twenty (20) days of the date of this Order.

IT IS SO ORDERED.

Dated: August 19, 2026

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE